**UNITED STATES v. GOLDSMITH et al.***

No. 399.

Circuit Court of Appeals, Second Circuit.
July 12, 1937.

S. S. Goldsmith, of New York City (Israel B. Oseas and Morton Pepper, both of New York City, of counsel), for appellants.

Leo J. Hickey, U. S. Atty., and Vine H. Smith and James G. Scileppi, Asst. U. S. Attys., both of Brooklyn, N. Y.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellants, Goldsmith being the vice president of the corporate appellant, were indicted with three others, Di Bello, Marabini, and Miller, who are not parties to this appeal, for conspiring to violate 26 U.S.C.A. §§ 1152a, 1162, 1162a, 1165, 1182, 1185, and 5 U.S.C.A. §§ 281 to 281e, inclusive, and for violating the named statutes. Goldsmith was convicted only under the first count which charged the conspiracy, and although the corporation was found guilty on other counts also, the

*Writ of certiorari denied 58 S.Ct. 38, 82 L.Ed. ——.

verdict was set aside and judgment arrested as to all but the conspiracy count. Di Bello pleaded guilty before trial; Marabini pleaded guilty at the trial and testified as a witness at the call of the government; and the jury disagreed as to the guilt of Miller. We are, therefore, now concerned only with the conviction and sentence of the two appellants on the conspiracy count.

■ Though there was as usual more or less conflicting testimony, the evidence was sufficient to justify the jury in finding that the corporate appellant was engaged in business in New York as a dealer in sugar, coffee, tea, spices, and cans, to name only in part the commodities it sold, having an established legitimate business largely in charge of appellant Goldsmith. Miller, a brother-in-law of Goldsmith, had sold some sugar to Di Bello and Marabini for use in an illicit still for making alcohol, which they ran in premises at Floral Park in Queens county, N. Y., when some time in February, 1936, he sold more sugar to Di Bello, who drove off with it without paying while Miller was closing the truck door. Soon after that Miller went to work for a brewery. About a month later Marabini and Di Bello went to see Miller to get more sugar, Di Bello expressing regret for having failed to pay for the last purchase and promising to make payment in installments. Miller refused to sell them more sugar while the debt was unpaid, but took them to Goldsmith, who agreed to sell them No. 13 brown sugar for use in their still, and they agreed to pay Goldsmith $5 on their debt to Miller whenever new purchases were made. Goldsmith's corporation had been duly required by written notice given it by the Commissioner of Internal Revenue on February 3, 1936, to report sales of sugar in accordance with 26 U.S.C.A. § 1162a, and the regulations promulgated thereunder, and he agreed not to report sales of sugar made to Marabini and Di Bello. Following this agreement, the corporate defendant, acting through Goldsmith, did make sales of sugar to Di Bello and Marabini which the seller was required to report, but did not as had been agreed, and also sold them a substance they called "medicine" for use in accelerating the fermentation of the mash. As there was no lack of evidence to prove the existence of the conspiracy charged and the active participation of the appellants in carrying out the agreement, we confine further discussion to other phases of the appeal.

■ As the conspiracy as alleged in the first count involved acts by the appellants which violated the law respecting sales of sugar by one required to report them and also other sections of the statute relating to stills, it is urged that the conspiracy count is bad for duplicity and that it was error to deny a motion to dismiss it based on that ground. It is clear enough, however, that the scheme had for its object the illegal selling of sugar to Marabini and Di Bello for use by them illegally for the distillation of alcohol. That was but one unlawful agreement though, because the corporate appellant was required to report the sales it made and the buyers were using sugar in violation of other sections of the statute, the one agreement contemplated the commission of acts in violation of different laws. Yet that did not prevent the charging in one count of a single agreement to commit more than one offense and argument that the count is duplicitous cannot be sustained. Frohwerk v. United States, 249 U.S. 204, 39 S.Ct. 249, 63 L. Ed. 561.

The corporate defendant was required to report the sales of sugar it made only in accordance with the provisions of regulations issued under the authority Joint Resolution of Congress No. 373 approved June 18, 1934 (26 U.S.C.A. § 1162a), which are now said to be based on a statute invalid because of an uncontrolled and therefore unlawful delegation of power to the Commissioner of Internal Revenue. So far as present purposes require its quotation, the resolution provides that: "Every person disposing of any substance of the character used in the manufacture of distilled spirits shall, when required by the Commissioner, render a correct return in such form and manner as the Commissioner, with the approval of the Secretary of the Treasury, may by rules and regulations prescribe, showing the names and addresses of the persons to whom such disposition was made, with such details as to the quantity so disposed of or other information which the Commissioner may require as to each such disposition, as will enable the Commissioner to determine whether all taxes due with respect to any distilled spirits manufactured from such substances have been paid."

■ Willful violations are made punishable by fine or imprisonment, or both, and

District Judges have reached different conclusions as to the validity of the resolution. It was upheld in United States v. Turner Bros., 11 F.Supp. 908 (D.C.E.D.N.Y.), but held unconstitutional in United States v. Ballard (D.C.) 12 F.Supp. 321. All will agree that the purely legislative powers of the federal government reside solely in Congress under the Constitution and that it has no power to renounce them in favor of any other branch of the government. Yet administrative details must of necessity often be left to the sound discretion of those whose duty it is to see that the laws passed by Congress are enforced. As the functions of government are broadened to keep pace with needs as they arise, it is inevitable that there should be conflict of opinion in respect to how specific a statute must be when dealing with any subject to keep that subject within congressional control and how much may be left within the more flexible realm of administrative detail to meet situations not clearly to be foreseen or too complex to be dealt with adequately in advance of the actual application of the law itself to the subject matter it covers.

█ Instances of failure to circumscribe the action of administrative officers sufficiently to keep it within bounds which only Congress may set are found in Panama Refining Co. et al. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. But virtually blanket powers were delegated in each instance to declare what would be unlawful and to enforce such declarations as criminal laws. Yet where the power to make and enforce rules and regulations is so fixed that they can but follow the will of Congress under limitations in the statute which itself is so specific that the field covered is defined, such rules and regulations as are fairly within such defined scope and are reasonably necessary to the proper administration of the law are to be upheld as lawful incidents of administration. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Kansas City Southern Ry. Co. v. United States, 231 U.S. 423, 34 S.Ct. 125, 58 L.Ed. 296, 52 L.R.A.(N.S.) 1; Interstate Commerce Comm. v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729; Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523. No little difficulty has been, and perhaps will be, experienced in trying to preserve the constitutional safeguards on the one hand, and in trying to create a workable system for the administration of laws adequate to deal with present day complexities on the other. See, Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015. Both of these considerations are vital to the preservation of our kind of government which must be equipped with laws that are sufficient and may be administered in a way to give them the requisite breadth and scope without at the same time permitting those who enforce the laws to make them also.

█ It is said that this resolution offends the constitution in that the Commissioner may require reports from whomsoever he pleases of those who dispose of the kind of substances covered and so oppress some and favor others as he may desire. It must, however, be noticed that while it cannot be said with absolute certainty that such power may not be abused, the plain purpose of the resolution is to provide a means for checking the supply of raw materials going into the manufacture of distilled spirits in order that the government may have that means of determining whether its proper revenue from such product is being collected. To this end the Commissioner is given the power to require records to be kept and reports to be made "with such details as to the quantity so disposed of or other information as will enable the Commissioner to determine whether all taxes due with respect to any distilled spirits manufactured from such substances have been paid." It was within this limited scope that the Commissioner was empowered to require reports to be made. It cannot be said that what he required of the corporate defendant went beyond such limits. One who disposed of the substances covered by the resolution, of which sugar was certainly one, was liable under the law to make such reports designed to provide the check which the Commissioner might find he needed in determining whether all of the taxes mentioned were paid. Congress could provide him with the means for obtaining such information in whatever detail might be necessary and that it preferred to let the Commissioner decide as to the need in the actual administration of the law rather than to require all dealers in such substances make reports, often perhaps wholly unnecessary and unwanted, curtailed the rights of no

one. One who disposed of such substances might well insist that he be required to furnish only such information as would enable the Commissioner to make his determination regarding the payment of taxes, but he could have no rights infringed because the Commissioner did not require all, or others, who also disposed of such substances to give information too. We think this delegation of power was properly limited to administrative details within United States v. Grimaud, supra, and that is so regardless of the fact that the regulations there involved only dealt with public lands. These regulations deal with the public revenue and, though it may be that they more closely affect private rights we believe the resolution is so limited that action within its scope was lawful. So the willful failure of the corporate defendant to furnish the information required by the notice given by the Commissioner was unlawful, and those agreeing to act and acting to bring about such a violation of the provisions of the resolution were guilty of an unlawful conspiracy.

 During the trial, revenue agents were permitted over objection to testify that they had followed Di Bello's car from the premises of the appellant Manhattan Coffee & Sugar Company, and had overtaken and talked with him. At one time some cans and two bags of salt were found in the car and at another time only some five gallon cans. They testified that he told them: "I knew you fellows were watching and trailing me. * * * when I went into the Manhattan Sugar Company I was told to watch out for a Plymouth automobile with two Federal men in the automobile that were in the neighborhood." Asked who told him that, he said, "The people in the Manhattan," without being more specific, and at another time the conversation was in substance the same. That this was pure hearsay as to the appellants cannot be denied, for there was nothing which brought it within the rule that statements made by one conspirator in furtherance of the conspiracy bind all. These statements were not in furtherance of the conspiracy and should have been excluded. As they were not that either Goldsmith or any one acting for the corporate defendant had warned Di Bello, they were rather colorless so far as either appellant is concerned though it cannot be denied that they had some tendency to show guilty

knowledge on the part of someone in the premises of the corporation and would, perhaps, lead to the inference that that someone was one or both of the appellants. Yet we are not bound to reverse a conviction so clearly supported as this is by competent evidence to show the appellants guilty beyond a reasonable doubt because a bit of cumulative evidence was erroneously admitted. On the contrary, we are bound not to, since the substantial rights of the parties were not affected. Jud.Code § 269, 28 U.S.C.A. § 391; United States v. Buchalter (C.C.A.) 88 F.(2d) 625.

Though some fault is now found with the charge, no exceptions were taken to it as given, and we think that on the whole the law pertinent to the issues was fairly covered in such a way as to preserve all the rights of the appellants.

Judgment affirmed.