**HURWITZ v. HURWITZ.**

No. 8342.

United States Court of Appeals for the
District of Columbia.
Argued April 13, 1943.
Decided June 22, 1943.

Mr. Russell Hardy, of Washington, D. C., for appellant.

Mr. William R. Lichtenberg, of Washington, D. C., with whom Mr. Samuel Barker, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and ARNOLD, Associate Justice.

ARNOLD, Associate Justice.

This is a suit by the appellee, Dorothy Hurwitz as Administratrix of the Estate of her deceased husband, against the appellant, Michael Hurwitz, the brother of the decedent. The complaint sought to recover from Michael Hurwitz certain sums of money, stock, and a mortgage note which were alleged to be the property of the estate. The defense was that part of the money represented the proceeds of the sale of real estate which Michael Hurwitz had purchased from his deceased brother, that the mortgage note had also been purchased, and that the balance of the property was a gift from his brother.

The evidence consisted largely of the testimony of interested parties and their relatives. It was in direct conflict. With respect to the proceeds of the real estate transferred to Michael Hurwitz the widow testified as to conversations with him tending to prove that the transfer was not a sale but a pretended conveyance for the purpose of putting the property beyond the reach of a former wife who claimed alimony. There was some doubt as to how Michael Hurwitz had acquired possession of the rest of the property. On some items

he made conflicting statements. Decedent had left a wife and one child, and the property claimed by Michael Hurwitz as a gift was substantially everything that decedent owned. Thus the case for the appellee was aided by the inference that normally a husband does not desire to deprive his wife and child of all interest in his property.

The case was submitted to the jury on special interrogatories agreed to by counsel, and the verdict was in favor of the administratrix on most of the items of property. Since there was ample evidence to support that verdict, a reversal on that ground will be denied.

A more serious question is whether the administratrix can recover the proceeds of the real estate on behalf of the heirs in the face of evidence that the transfer which she seeks to set aside had the illegal purpose to defeat creditors. The administratrix argues that Section 12—403 of the District of Columbia Code (1940) authorizes such proceeding. That section applies to executors, administrators, receivers, assignees or trustees of an estate or of the property of an insolvent estate, corporation, association, partnership or individual. It permits such officers to stand in the shoes of persons interested in the estate, and to set aside for the benefit of such persons transfers which they themselves could have attacked. However, the persons for whose benefit the transfer is sought to be set aside can get no increased substantive rights because an administrator is bringing the suit. In this case the administratrix seeks not to benefit creditors but to set aside a pretended gift, for the benefit of herself and child as heirs. But the heirs get no additional rights because their interest is represented by the administratrix. The statute is procedural.[1] The rights of the heirs here depend on substantive law.

According to the decided weight of authority a grantor cannot recover property from a grantee who received it in fraud of creditors even though there was no consideration and no intention to make a gift.[2] Most of the cases hold that when the grantor dies his heirs are in no better position to enforce a resulting trust arising from a

---

[1] See McQuaide v. Perot, 1918, 223 N. Y. 75, 119 N.E. 230, 232, construing a similarly worded statute.

[2] Hopp v. Calloway, 1922, 52 App.D. C. 3, 280 F. 977; 3 Scott on Trusts, § 422, p. 2196 ff. (1939); 1 Bogert on Trusts and Trustees, 1935, § 211, p. 617.

fraudulent conveyance.[3] Since this rule permits the unjust enrichment of a fraudulent trustee it is subject to many confusing exceptions. For example it has been held that where the purpose to defraud creditors has failed of accomplishment the grantor can recover the property. It has also been held that if the grantor acts promptly he may set aside the transfer, because in this way he is preventing the accomplishment of his own illegal purpose.[4]

Professor Scott in his treatise on trusts criticizes the rule in the following language:

"The courts, it is believed, have been somewhat too ready to deny relief to the settlor, without much consideration of the injustice which results from permitting the trustee to keep the property. There is no doubt that as between the parties it is more just to require the trustee to surrender the property to the settlor than to permit the trustee to keep it. When the trustee is permitted to keep it, it is on the ground that there is a public policy against recovery by the settlor. The only justification for such a policy would seem to be that it might discourage others from creating trusts for such purposes. The rule denying relief to the settlor, however, seems to be so arbitrary in its operation that its value as a preventive measure may well be doubted.

"In denying relief to the settlor where the trust has failed for illegality the courts have not ordinarily considered with much care the question of public policy involved. They have frequently contented themselves with the quoting of one or another of the appropriate maxims, such as in pari delicto potior est conditio defendentis or ex dolo malo non oritur actio."[5]

It is difficult to answer this criticism even in a case where the grantor himself attempts to set aside the conveyance. But where, as in this case, the heirs who are not responsible for the transfer seek to enforce the resulting trust, there seems no reason for following this rule other than to visit the sins of the fathers upon their children. For that reason the Supreme Court of Errors of Connecticut has repudiated the majority doctrine in a decision which allowed an administrator to recover property for the benefit of the heirs even though it had been transferred by the decedent in order to put it beyond the reach of attachment.[6] Speaking through Chief Justice Maltbie, the Connecticut court said: "The question really is, should the turpitude of the deceased be visited upon his heirs and distributees; because equity will not listen to him on account of his own evil doings, will it shut its doors also to those who, presumably, had no part in that evil, and so refuse to them their substantial rights? The defendant has no right to hold the property, and to us there seems no reason why persons whose hands are clean should be precluded from claiming it merely because their ancestor soiled his own hands in the transaction. To hold that they cannot assert a right to the property would make the principle invoked an instrument of injustice, which should not be done. Miller & Lux v. Enterprise Canal & Land Co., 142 Cal. 208, 212, 75 P. 770, 100 Am.St.Rep. 115."[7]

We accept the decision of the Supreme Court of Connecticut as the better rule. A court should not enrich a fraudulent grantee at the expense of parties not responsible for the original grantor's attempt to avoid creditors. The only rational basis for refusing to enforce a resulting trust in favor of a fraudulent grantor is that the grantor himself does not come into court with clean hands. But it does not follow that the administratrix or the heirs of his estate have unclean hands. The effect of the judgment for the appellee will place her husband's estate in her hands as administratrix subject to his lawful debts.[8] Therefore, the evidence in this case that the deceased was attempting to defraud creditors does not in itself bar recovery by the administratrix.

Another assignment of error is that the court below, over the objection of the defendant, submitted to the jury a cause of action arising in equity. It is questionable whether the objection was made in time but we need not consider that question. There is no reason for holding that the submission of the issues to the jury was prejudicial error. A defendant has no constitutional right to a trial by the

---

[3] 3 Scott on Trusts, § 422.6, p. 2204 (1939).

[4] Ibid., Vol. 1, § 63, p. 399; Vol. 3, § 422.2, pp. 2200, 2201.

[5] Ibid., Vol. 3, § 422, pp. 2196, 2197 (1939).

[6] Finnegan v. La Fontaine, 1937, 122 Conn. 561, 191 A. 337.

[7] Id., 191 A. 337, 340.

[8] Cf. Dent v. Ferguson, 1889, 132 U.S. 50, 62, 10 S.Ct. 13, 33 L.Ed. 242.

court without a jury.[9] The jury may render a verdict on equitable issues which the court may use as an advisory aid in making findings of fact. Here the record does not show how the court considered the verdict. If the cause were equitable it should have made independent findings.[10] Therefore, the error, if any, is merely the absence of a finding of fact by the court.

■ The duty of the trial court to make findings of fact should be strictly followed.[11] But such findings are not a jurisdictional requirement of appeal which this court may not waive.[12] Their purpose is to aid appellate courts in reviewing the decision below.[13] In cases where the record is so clear that the court does not need the aid of findings it may waive such a defect on the ground that the error is not substantial in the particular case. That is the situation here. The trial court's charge to the jury discloses adequately the issues of fact which were before the court and jury, and upon a review of the evidence we would reach the same result as that reached by the jury. Therefore, it is immaterial whether the cause below was in equity or at law. In either case a judgment following the verdict of the jury should be sustained.

■ This decision makes it unnecessary in most cases for an appellate court to pass on the distinction between legal and equitable causes. It is a procedural distinction that has caused unending confusion in code pleading. It was the original purpose of code pleading to abolish the distinction in order to permit causes, whether legal or equitable or both, to be decided on principles of substantive law rather than on whether the parties chose the right side of a court which had both law and equity jurisdiction. If that purpose is followed the distinction will become immaterial except in two types of cases where the record shows that substantive rights in the method of trial have been abridged by the court below. The first of these types is where a jury has been denied after timely objection. If the action is at law the appellant has lost a constitutional right. The second type is where the court has felt itself bound to follow a jury verdict against its own judgment of the evidence. If the action is in equity the appellant has been deprived of the court's independent opinion. But to warrant reversal in such a case the record should show that the court using its independent judgment would have been justified in disregarding the verdict. The mandate should not be for a new trial but to require the trial court to make independent findings of fact and enter judgment in accordance with those findings. Neither of these situations exist here. Therefore, there is no prejudicial error.

We affirm the judgment of the court below.

Affirmed.

9 "Where an action at law is erroneously tried in equity, very different questions are raised upon appeal from those which arise where a suit in equity is erroneously tried at law. In the latter case the court, if satisfied that the proper result was reached, may treat the error as harmless. In the former, it must send the case back for a new trial, because of the constitutional guaranty of trial by jury." Great American Ins. Co. v. Johnson, 4 Cir., 1928, 27 F.2d 71 (on rehearing of 25 F.2d 847), certiorari denied 278 U.S. 629, 49 S.Ct. 29, 73 L.Ed. 548. Cf. Ettelson v. Metropolitan Life Insurance Co., 1942, 317 U.S. 188, 63 S.Ct. 163, 87 L. Ed. ——.

10 Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

11 Rainey v. Rainey, 1942, 76 U.S.App. D.C. 341, 131 F.2d 349; See Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774; United States v. Forness, 2 Cir., 1942, 125 F.2d 928, certiorari denied City of Salamanca v. U. S., 316 U.S. 694, 62 S. Ct. 1293, 87 L.Ed. ——.

12 Goodacre v. Panagopoulos, 1940, 72 App.D.C. 25, 110 F.2d 716.

13 Ibid; see Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774.