**ROSSITER v. VOGEL et al.**

No. 257.

Circuit Court of Appeals, Second Circuit.

March 29, 1945.

Jerome E. Malino, of New York City (Gilbert & Gilbert and Francis Gilbert, all of New York City, on the brief), for plaintiff-appellant.

Milton M. Rosenbloom, of New York City (O'Brien, Driscoll & Raftery and Arthur F. Driscoll, all of New York City, on the brief), for defendants-appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Our previous decision in this case, 2 Cir., 134 F.2d 908, reversed a summary judgment granted by the District Court, D.C.S.D.N.Y., 46 F.Supp. 749, which had established plaintiff's rights to the renewal copyright of Shelton Brooks' song "Some of These Days" in 1938 on the basis of an assignment of the expectancy of renewal by Brooks to plaintiff on November 8, 1926. Our reversal was because defendants, who relied on a later assignment from Brooks, had shown by affidavits in opposition to the summary judgment that they attacked the assignment to plaintiff on grounds of fraud and of inadequacy of consideration sufficient to prevent its enforcement under the authorities cited there and earlier in M. Witmark & Sons v. Fred Fisher Music Co., 2 Cir., 125 F.2d 949, 954, 956, affirmed Fred Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 647, 656, 657, 63 S. Ct. 773, 87 L.Ed. 1055. Although these grounds of objection had not been set up in the answer, we held, in accordance with the usual practice, Downey v. Palmer, 2 Cir., 114 F.2d 116; Cohen v. Randall, 2 Cir., 137 F.2d 441, 444, certiorari denied 320 U.S. 796, 64 S.Ct. 263, that facts appearing in affidavits which would justify an amendment of the pleadings would prevent the entry of a final judgment. Upon remand of the case defendants amended their answer to plead these defenses in detail; and after an extended trial, the district judge made findings of fact and conclusions of law to the effect that Brooks' contract of 1926 with plaintiff was unenforceable. This appeal is from the resulting dismissal of the complaint.

The judge's findings were on the theory that Brooks' "bill of sale" of November 8, 1926, purporting to transfer "all copyright renewals," and thus being an assignment of an expectancy, operated only as an executory contract to transfer the renewal rights when they were to accrue in 1938, and that it was invalid for lack of consideration. Under our earlier decision the assignment, if valid, would be treated as a present assignment of a future right. Hence the issue tendered was not the bare legal validity of the instrument, but whether defendants had established their defenses of lack of equity, justifying a court of equity in granting that aid which was necessary to make the assignment ultimately effective. The findings thus made were more directly apposite to the judge's theory than to the one we set forth. But since the judge's view is quite clear, as was also the evidence, we see no occasion to return the case for more findings. For findings "are not a jurisdictional requirement of appeal," but only "aid appellate courts in reviewing the decision below"; and defects therein may be waived where "the error is not substantial in the particular case." Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, 148 A.L.R. 226; Sbicca-Del Mac, Inc., v. Milius Shoe Co., 8 Cir., 145 F.2d 389, 400. Here the important finding is explicit on the point that as to the 1926 assignment "no consideration therefor was offered or paid by plaintiff to Brooks."

More specifically it appears that this unsealed "bill of sale" recited merely a nominal consideration of one dollar, which, as the evidence showed, was not actually paid. That one dollar as consideration was inadequate and inequitable is hardly debatable. The song had a large sale—nearly 500,000 copies—after its original copyright in 1910 and through 1912; and then, while its sales did fall off until 1922, it again sold over 15,000 copies between 1922 and 1926. And when plaintiff secured the bill of sale he was planning

a reissue with a different orchestration, which led to a sale thereafter during the life of the copyright of some 100,000 copies. As a matter of fact, plaintiff relied on a claimed oral promise, made when Brooks executed the assignment, to pay him royalties on the song after the renewal of the copyright in 1938. Whatever might be the adequacy of such a promise to pay royalties beginning only twelve years hence on so ephemeral a thing as a popular song—especially before the days of sound films and the extensive development of the radio—the important point here is that the judge concluded there was no such contract. This is shown not only by his general findings and conclusion above stated, but more particularly by his remark, after extensive examination of plaintiff by himself, as well as counsel, to discover the existence of a promise which Brooks' testimony had denied, that "it seemed perfectly clear to me that there is no such thing as an agreed royalty without an agreement." This conclusion was amply justified on plaintiff's own evidence, since he was forced to admit that royalty contracts for songs varied greatly in rates and he had not even proposed a rate to support his vague promise of payments to commence in the remote future. In short, the claimed agreement was not just inadequate; it was nonexistent.

While plaintiff must recover on the strength of his own case, we may note that the assignment by Brooks to Vogel in 1937, upon which defendants rely, contained a specific agreement to pay him 50 per cent of the gross receipts from the musical composition—a promise considerably more generous than any suggested by plaintiff when, finding his hold upon the author becoming precarious, he attempted successively to procure various definite commitments. Thus no reason for questioning this contract appears. There seems to have been some misinterpretation of the statement in our previous opinion, 134 F. 2d 908, 911, supra, that "it has been universally held that a mere promise to pay does not constitute a valuable consideration within the recording acts." But this had to do only with the effect of recording the assignments, as indeed the authorities cited made amply clear. Discussion of the equity or inequity of the transaction occurred elsewhere in the opinion and followed the lines applied herein.

Affirmed.