**DOUDS v. LOCAL 1250, RETAIL WHOLESALE DEPARTMENT STORE UNION OF AMERICA, CIO.**

No. 86, Docket 21130.

United States Court of Appeals Second Circuit.

Nov. 8, 1948.

See also 170 F.2d 700.

Neuburger, Shapiro, Rabinowitz & Boudin, of New York City, (Leonard B. Boudin, Victor Rabinowitz, and Belle Seligman, all of New York City, of counsel) for appellant.

Robert Denham, Gen. Counsel, David P. Findling, Associate Gen. Counsel, and A. Norman Somers, Asst. Gen. Counsel, and Paul S. Kuelthau, Bernard Dunau, and Norton J. Come, Attys., all of Washington, D. C., for National Labor Relations Board.

Poletti, Diamond, Freidin & Mackay, of New York City (Jesse Freidin, Sanford Kadish, and Emanuel Gordon, all of New York City, of counsel), for Oppenheim Collins & Co., Inc., Charging Party.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On or about September 1, 1948, Oppenheim Collins & Co., Inc., filed an amended charge with the National Labor Relations Board, alleging that the respondent Local 1250, Department Store Employees Union, was engaged in unfair labor practices within the meaning of § 8(b), Subsection (4) (C) of the National Labor Relations Act as amended June 23, 1947, 61 Stat. 136, 29 U. S.C.A. § 158(b) (4) (C), which is set forth in the margin,[1] in that it was inducing the employees of Oppenheim Collins & Co., Inc., to engage in a strike, an object being to require the employer to recognize or bargain with respondent, although on September 1, 1948, the Board had certified Retail Clerks International Association, AFL, another labor organization, as the representative of the employees under § 9 of the National Labor Relations Act, as amended, 29 U.S.C.A. § 159. As a basis for its certification, the Board had found after holding an election that a majority of the eligible voters had designated the Retail Clerks as the representative of the employees for the purposes of collective bargaining. After the certification of the Retail Clerks, the Board investigated the charge of Oppenheim Collins & Co., Inc., and found it had reasonable cause to believe that the charge was true and filed a petition for injunctive relief pursuant to § 10(l) of the Act, the pertinent portions of which are set forth in

---

[1] "Sec. 8.

"(b) It shall be an unfair labor practice for a labor organization or its agents— * * *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: * * *

"(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9; * * *"

the margin.[2] Thereupon, the District Court ordered that the respondent show cause why the injunction should not be granted; the respondent moved to dismiss the petition by the Board "on the grounds that" the court was without jurisdiction "over the subject matter of the * * * proceeding and * * * over the person of the [Union], by reason of the fact that Section 10(*l*) of the National Labor Relations Act, as amended * * * is unconstitutional * * * being repugnant to Article III, Sections 1 and 2 of the Constitution of the United States and to the Fifth Amendment thereto." The court denied the motion to dismiss and the respondent waived the taking of formal testimony. Thereupon the court, in the preamble to the order which it issued, found that there was "reasonable cause to believe" that the Union had engaged and was engaging in "acts and conduct in violation of Section 8(b), Subsection 4(C) of the Act," and pending the final adjudication of the matter, issued an injunction, the pertinent portions of which are quoted in the margin.[3] From the foregoing injunction and an order denying the motion to dismiss the petition therefor, the respondent has appealed. We think that there is no merit in the appeal.

---

[2] "Sec. 10:

"(*l*) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 8 (b), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States (including the District Court of the United States for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: * * * Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: * * *."

[3] It is hereby ordered adjudged and decreed that pending the final adjudication of this matter by the National Labor Relations Board, respondent Local 1250, Retail Wholesale Department Store Union, CIO, and its agents, servants, employees, attorneys, and all persons acting in active concert or participation with it, be and they hereby are enjoined and restrained from engaging in a strike, or inducing or encouraging the employees of Oppenheim Collins & Co., Inc., to engage in a strike or a concerted refusal in the course of their employment to transport or otherwise handle or work on goods, articles, materials or commodities or to perform services, by the acts or conduct set forth below or by any other like acts or conduct:

(1) Picketing or patrolling at the stores of Oppenheim Collins & Co., Inc., with signs, placards, banners, or other similar devices, which seek to induce employees to engage in a strike or in a concerted refusal to work;

(2) Distribution or mailing circulars, handbills, leaflets, or other written material, which seeks to induce employees of Oppenheim Collins & Co., Inc., to engage in a strike or in a concerted refusal to work;

(3) Visiting at the homes of any of the employees of Oppenheim Collins & Co., Inc., for the purpose of inducing them to engage in a strike or in a concerted refusal to work;

(4) Ordering, directing or threatening any of the employees of Oppenheim Collins & Co., Inc., or by permitting any such to remain in effect, or promising or giving them any benefits, for the purpose of inducing such employees to engage in a strike or in a concerted refusal to work;

Where an object of such strike or such acts or conduct is to force or require Oppenheim Collins & Co., Inc., to recognize or bargain with respondent as the collective bargaining representative of any of the employees of Oppenheim Collins & Co., Inc., in the collective bargaining unit covered by a certain certification issued by the National Labor Relations Board in Case No. 2-RC-562, dated September 1, 1948, so long as such certification remains operative or in effect.

■ The respondent Union argues that the District Court was exercising non-judicial functions and therefore violating Article III of the Constitution in that the ultimate decision as to the merits of the controversy will not be made by the court but by an administrative body, to wit, the National Labor Relations Board, whose decision will not be subject to review by the District Court, and can only be tested in the Court of Appeals in the course of an enforcement proceeding. In support of its position, respondent argues that no case or controversy existed before the District Court within the meaning of Article III of the Constitution. It admits that a court may grant a preliminary injunction to protect its own jurisdiction or that of another court, but argues on grounds most difficult to understand that Congress is constitutionally precluded from conferring on a court jurisdiction to lend its aid to an administrative body, as Congress attempted to do in § 10(*l*) of the National Labor Relations Act.

We can see no basis for such arguments. Here was a dispute to be resolved under the direct provisions of the statute. It did not cease to be a dispute because the ultimate decision on the merits would not rest with the court. A similar contention was made in the Court of Appeals for the Seventh Circuit in Federal Trade Commission v. Thomsen-King & Co., 109 F.2d 516, but was rejected by that court. In Evans v. International Typographical Union, D.C.S.D. Ind., 76 F.Supp. 881, Judge Swygert dealt with a like contention and granted a preliminary injunction to the Labor Board under provisions which are practically indistinguishable from those in Section 10(*l*).

■ The contention of appellant's counsel that he is in any way aided by the opinion of Chief Justice Hughes in Aetna Life Insurance Co. of Hartford, Conn., v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L. Ed. 617, 108 A.L.R. 1000, which interpreted the constitutional limits of the Federal Declaratory Judgment Act, is unsound. The contention there was that the court was not dealing with a case or controversy. This contention was overruled and a case or controversy defined thus: "A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

This definition supports our view in the case at bar. It is to be noticed that the court only required the controversy to be justiciable and final in the sense that it was not to be merely hypothetical or advisory. We hold that for the purposes of relief by preliminary injunction the action of the District Court was final.

It is quite apparent that the Secretary of Agriculture was aided in the exercise of his jurisdiction when the Supreme Court, after holding in Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Id., 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129, that a full hearing had not been accorded to certain stockyard owners charged with collecting excessive rates, further decided in United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211, that the alleged overcharges should be retained in the custody of the District Court pending the result of a new and adequate hearing. It is to be noted that at this stage of the litigation there was no pending review of an administrative order and that such an order was to be based on future administrative hearings. See also United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, opinion by Mr. Justice Frankfurter.

In Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L. Ed. 1047, it was argued that the issuance of a subpoena in aid of an investigation of the ICC was not a judicial function. But the argument was rejected by the Supreme Court [Interstate Commerce Commission v. Brimson, supra, 154 U.S., at page 489, 14 S.Ct. at page 1137]. A similar result was reached in Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, and Oklahoma Press Publishing Co. v.

Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L. Ed. 614, 166 A.L.R. 531. In none of these cases was the constitutional argument urged before us sanctioned by the courts.

 It is also argued that if the injunction granted was final, the respondent was deprived of due process because there was no hearing on the merits, which still remain to be determined by the Board. Such a criticism might be made of any preliminary injunction, whether in aid of a suit pending in the court where the motion is made, or in another court, or in an administrative tribunal. In the present case, the District Court acted on the complaint of the Board which the respondent had an opportunity to meet if it chose. In the face of its waiver of the right to meet allegations showing probable cause, there can be no merit in the claim of lack of due process.

 The further contention is made that the injunction order is invalid because unsupported by findings of fact under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. But the respondent has only attacked the decision of the court on constitutional grounds and has waived its right to meet the allegations of the complaint, which therefore procedurally stood admitted. The absence of findings was not only a non-jurisdictional defect [see opinion of Clark, J., in Rossiter v. Vogel, 2 Cir., 148 F.2d 292], but findings were not requisite where no issue of fact existed. Fontes v. Porter, 9 Cir., 156 F.2d 956.

For the foregoing reasons, the order of the court below denying the motion to dismiss the petition and granting the preliminary injunction is affirmed.

CLARK, Circuit Judge (concurring).

I agree that there is no merit in the grounds taken for the appeal. I am, however, much troubled by the scope of the injunction actually entered; in this matter of purely local concern, not affecting the general public as do railroad or coal strikes, we have an injunction of the broadest form, prohibiting, among other things, "all persons acting in active concert or participation with" the union from "engaging in a strike" or "visiting at the homes of any of the employees" of the charging party to engage in a strike, etc. Before the recent Act such injunctions appear to have been quite clearly objectionable;[1] and the Act itself explicitly preserves some rights to quit work, to express or disseminate views, arguments, and opinion, and to strike, while it directs the court only to grant such temporary relief or restraining order as the court "deems just and proper." 29 U.S.C. A. §§ 143, 158(c), 160 (j, k), 163. Nevertheless it cannot be gainsaid that the Act does put the federal courts far into the task of terminating strikes, and perhaps it is not greatly worth while for an intermediate court to try to dress up the details of an injunction of its own motion. Hence I am, somewhat reluctantly, concurring in this result, although, as appears in the accompanying case, I do think respondent should have the right of court review of these matters without drastic and cumulative penalties against it.

---

[1] See Bakery & Pastry Drivers & Helpers Local 802 of International Brotherhood of Teamsters v. Wohl, 315 U.S. 769, 774, 775, 62 S.Ct. 816, 86 L.Ed. 1178; Carpenters & Joiners Union of America, Local 213 v. Ritter's Cafe, 315 U.S. 722, 725, 727, 728, 62 S.Ct. 807, 86 L.Ed. 1143.