**HUARD-STEINHEISER, INC.,**
Appellant,

v.

**George A. HENRY, Supervisor in Charge,
Alcohol and Tobacco Tax Unit,**
Appellee.

**No. 14001.**

United States Court of Appeals
Sixth Circuit.

June 17, 1960.

Holland, Senior District Judge, dissented.

Robert B. Aikens of Monaghan & Monaghan & Crawmer, Detroit, Mich. for appellant.

Meyer Rothwacks, Dept. of Justice, Washington, D. C., Charles K. Rice, Lee A. Jackson, I. Henry Kutz and Kenneth E. Levin, Dept. of Justice, Washington, D. C., Fred W. Kaess, U. S. Atty., Orrin

C. Jones, Asst. U. S. Atty., Detroit, Mich., on brief, for appellee.

Before McALLISTER, Chief Judge, MARTIN, Circuit Judge, and HOLLAND, District Judge.

MARTIN, Circuit Judge.

The issue on this appeal is whether or not the United States District Court for the Eastern District of Michigan abused its discretion when it refused to grant a temporary injunction to restrain the Supervisor in Charge of the Alcohol and Tobacco Tax Unit in Detroit, Michigan, from enforcing letters which demanded that the appellant's incorporated wholesale grocery file information reports concerning the sale at its place of business of sugar, rye and cracked corn. The action of the appellee supervisor was taken under authority of Federal Regulations of the Secretary of the Treasury, adopted pursuant to section 5213(a) of the Internal Revenue Code of 1954, revised by section 5291, I.R.C. [P.L. 85–859, Title II, § 201 (1958), 72 Stat. 1373], 26 U.S.C.A. § 5291.[1]

The regulations promulgated by the Secretary of the Treasury, through his delegate [20 F.R. 4818 (July 6, 1955), amending 20 C.F.R., section 173.10] provided, in effect, that the appellant, who falls within the coverage of the regulations, should make a detailed report to the Internal Revenue Service of every sale of sugar and cracked corn of 100 pounds, or more, and of every sale of rye of 200 pounds, or more, except sales made to local trade buyers by delivery at their places of business. The demand letters required that such reports must include the name and address of the purchaser, the automobile registration number of the vehicle used by him, and the number and date of issuance of his operator's license. The basis for the action filed by appellant in the district court is that the foregoing demand letters and the regulations authorizing them are invalid as applied to appellant, for the reason that they are beyond the authority granted to the Secretary of the Treasury, or his delegate, by the aforesaid section 5213(a) of the Internal Revenue Code of 1954 [Revised section 5291]; and for the further reason that the letters and regulations promulgated pursuant to statutory authority of the code section constituted a means of depriving appellant of property in violation of the Fifth Amendment to our national Constitution.

Appellant alleges that enforcement of the demand letters would cause irreparable injury to its business. It avers that its annual business aggregated one and three-fourths million dollars in 1958: all of which sales were made by delivery to known trade buyers at their places of business, with the exception of $330,000. $300,000 of the $330,000 in sales was made to known trade buyers who picked up the merchandise at appellant's place of business; and the remaining $30,000 in sales was said to have been made to known customers, who also picked up the merchandise at appellant's place of business.

---

1. "(a) Requirement. Every person disposing of any substance of the character used in the manufacture of distilled spirits, or disposing of denatured distilled spirits or articles from which distilled spirits may be recovered, shall, when required by the Secretary or his delegate, render a correct return, in such form and manner as the Secretary or his delegate may by regulations prescribe, showing the name and address of the person to whom each disposition was made, with such details, as to the quantity so disposed of or other information which the Secretary or his delegate may require as to each such disposition, as will enable the Secretary or his delegate to determine whether all taxes due with respect to any distilled spirits manufactured or recovered from any such substance, denatured distilled spirits, or articles, have been paid. Every person required to render a return under this section shall keep such records as will enable such person to render a correct return. Such records shall be preserved for such period as the Secretary or his delegate shall by regulations prescribe, and shall be kept available for inspection by any internal revenue officer during business hours."

A known trade buyer is one who operates a retail store, such as a grocery store, and purchases the commodity for resale. Appellant avers that the requirement of making the foregoing reports would be costly and burdensome, that it would be discriminatory against it in view of the fact that most of its competitors were not required to make such reports; and that it will suffer irreparable injury if a preliminary injunction against the enforcement of the letters is not issued pending a trial on the merits. It insists that its legal rights have been invaded by the issuance of the demand letters; that the regulations, as applied to it, are void because in excess of authority granted by the statute; that the regulations are arbitrary and capricious; and that they are violative of the Fifth Amendment.

Appellant thus states its exact position: "The appeal in the present case has not attacked the statute, but has assumed that it is constitutional. It has taken the position that the regulation and demand letter issued pursuant thereto are as against the appellant, in violation of the due process clause of the Fifth Amendment to the Federal Constitution."

The further argument is made that the district court erred in failing to make findings of fact and conclusions of law as a basis for its refusal to grant the preliminary injunction in the case. The prayer of appellant is that the order of the district court denying its motion for a preliminary injunction be set aside and that the case be remanded with instructions that a preliminary injunction be entered pending a trial on the merits; or, in the alternative, that the district court grant appellant a new hearing on its motion for a preliminary injunction, and thereafter enter findings of fact and conclusions of law in support of its decision on the motion.

We are of opinion that appellant is not entitled to the relief prayed on either of its stated grounds, or on any ground. We find no abuse of discretion by the district court in refusing to grant a preliminary injunction to restrain the appellee Supervisor from enforcing the demand letters requiring appellant to file the prescribed information reports concerning sales, at its place of business, of sugar, rye and cracked corn in the quantities specified.

It appears that nothing new has been presented in this appeal. The issues raised by appellant have been determined against it long ago. More than twenty-six years ago, this court upheld regulations (similar to those here involved) which required wholesale and retail grocers to report to the Internal Revenue Commissioner their sales of sugar, the regulations having been promulgated pursuant to the statute requiring information concerning the disposition made of substances used in the manufacture of distilled spirits. DiSanto v. United States, 6 Cir., 93 F.2d 948, 950, certiorari denied 303 U.S. 662, 58 S.Ct. 829, 82 L.Ed. 1121. Neither the statute nor the regulation was found to violate the Constitution of the United States. Moreover, the matter of discrimination was not deemed consequential. Speaking for this court, Judge Hicks said: "The necessity and propriety of empowering the Commissioner to require one dealer to make returns without requiring the same duty of all was a matter for Congress to determine [citing Supreme Court opinion]. There was a substantial basis for it * * * The regulations did not disturb any property right of appellant, and the provision in the act that their violation subjected him to fine and imprisonment did not affect its constitutionality. U. S. v. Grimaud, supra, 220 U.S. 506, at page 517, 31 S.Ct. 480, 55 L.Ed. 563. Our conclusion is in accord with United States v. Goldsmith et al., 2 Cir., 91 F.2d 983; Dano v. United States, 3 Cir., 91 F.2d 1012; and United States v. Turner Bros., D.C., 11 F.Supp. 908."

United States District Judge West, whose judgment in the DiSanto case was affirmed [6 Cir., 93 F.2d 948, 950], said [D.C.N.D.Ohio, 20 F.Supp. 254, 255]:

"Legislative power is not improperly delegated to the Commission-

er. True, he may or may not require a dealer in sugar, yeast, etc., to report his sales. The situation may well be such that instead of being fair, it would be quite unfair to treat all dealers alike in this respect. The Commissioner and his subordinates may be expected to have information on which to base discretionary action, and the regularity of his acts is to be presumed. United States v. Chemical Foundation, 272 U.S. 1, 14, 47 S.Ct. 1, 71 L.Ed. 131. * * * The validity of the Resolution and the sufficiency of the indictment therefore turn on the power of Congress to vest in the Commissioner the right to require returns from the defendant, while not demanding like returns from all other dealers. I have no doubt of the existence of this power.

"Congress may make all laws proper for carrying into execution its powers with respect to the collection of taxes. And where the law is not prohibited and is calculated to aid in effecting this object, the court will not inquire into the degree of its necessity. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579. The making of these reports by dealers in sugar can be expected under proper administration of the law to aid materially in discovering frauds on the revenue."

The argument that there was unlawful discrimination against one grocer in favor of many competitors was thus rejected many years ago by the Court of Appeals for the Second Circuit in United States v. Goldsmith, 2 Cir., 91 F.2d 983, 985: "It is said that this resolution offends the constitution in that the Commissioner may require reports from whomsoever he pleases of those who dispose of the kind of substances covered and so oppress some and favor others as he may desire. It must, however, be noticed that while it cannot be said with absolute certainty that such power may not be abused, the plain purpose of the resolution is to provide a means for checking the supply of raw materials going into the manufacture of distilled spirits in order that the government may have that means of determining whether its proper revenue from such product is being collected. To this end the Commissioner is given the power to require records to be kept and reports to be made 'with such details as to the quantity so disposed of or other information as will enable the Commissioner to determine whether all taxes due with respect to any distilled spirits manufactured from such substances have been paid.' * * * One who disposed of the substances covered by the resolution, of which sugar was certainly one, was liable under the law to make such reports designed to provide the check which the Commissioner might find he needed in determining whether all of the taxes mentioned were paid. Congress could provide him with the means for obtaining such information in whatever detail might be necessary and that it preferred to let the Commissioner decide as to the need in the actual administration of the law rather than to require all dealers in such substances make reports, often perhaps wholly unnecessary and unwanted, curtailed the rights of no one."

■ We see no merit or logic in the argument that the regulation should be so narrowly construed as to hold it unenforceable in requiring reports to be made concerning the *future* sales, as well as *past* sales, of sugar, rye and cracked corn. We do not construe the language of either the Internal Revenue Code or the Treasury Regulations promulgated under it to require any such interpretation. The regulation is concerned with furnishing a means of collecting the Internal Revenue taxes on whiskey; and whether the reports on the sales of sugar, rye and cracked corn be made in the past or in the future is immaterial. The Congress desired evidently that useful facts be divulged, whether concerned with past or with future sales of these commodities.

■■ With respect to denial of the temporary injunction in the instant case,

the district judge is well supported by the authority, among others, of Wing v. Arnall, Em.App., 198 F.2d 571, 574, in which Chief Judge Maris said: "The granting of a temporary injunction is not a matter of right, however, even if irreparable injury might otherwise result to the complainant but is an exercise of judicial discretion [Virginian Ry. Co. v. United States, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463]. And where a temporary injunction is sought which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the complainant. [Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834]."

■■ In the instant case, the failure of the district court to put on record findings of fact and conclusions of law in support of its refusal to grant a temporary injunction in this case resulted in no prejudicial error. The record discloses clearly without necessity of findings the basis upon which denial of the injunction rested. We adhere to what we said in Urbain v. Knapp Brothers Manufacturing Company, 6 Cir., 217 F.2d 810, 816: "We are in accord with the insistence of appellees that the failure of the District Court to comply with Rule 52(a) in respect of findings of fact does not demand reversal of the correct judgment of the District Court, if a full understanding of the issues could be reached without the aid of findings, even though such findings would have been helpful. Rule 52(a) should not be construed as if it were a law of the Medes and Persians." See also Douds v. Local 1250, Retail Wholesale Department Store Union, 2 Cir., 170 F.2d 695, 699; Thomas v. Peyser, 73 U.S.App.D.C. 155, 118 F.2d 369, 374. Cf. Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, 148 A.L.R. 226; Burman v. Lenkin Const. Co., 80 U.S.App.D.C. 125, 149 F. 2d 827, 828.

The judgment of the United States District Court is affirmed.

HOLLAND, Senior District Judge, Designate (dissenting).

This is a case involving Section 5213 (a) of the Internal Revenue Code of 1954, as amended by 72 Stat. 1373 (1958), 26 U.S.C.A. § 5291, both in its interpretation and its application.

The plaintiff was before the Court as a corporation committed to the observance of all applicable laws in the conduct of its grocery business. There is nothing in the record to warrant any other characterization of the plaintiff corporation, in its management and conduct by its officers and agents.

First I take up the matter of interpretation of the Section. A careful reading of this Section indicates that it refers to the obtaining of information by the Alcohol and Tobacoo Tax Unit only as to sales of merchandise in the *past*. The evident purpose of the Section was to aid the Alcohol and Tobacco Tax Unit in obtaining evidence for the prosecution of a violation in the *past*, that is, an allegedly *past* occurrence. This is so whether the information would be helpful in the presentation of a conspiracy case involving the seller itself as a defendant, or whether it was desired only in connection with a manufacturer, a moonshiner, in simple words. The plaintiff here was ordered to give information daily as to its sales of sugar in specified quantities, which would be of a *future* occurrence date, that is, a sale that would take place after the receipt of the demand letter. The Congressional Act is properly construed as referring to a *past* sale, and anything in the regulation which would extend the Act itself to *future* sales, is beyond the scope of the Congressional Act. Thus interpreted, and I think clearly so, I could stop here and justify my conclusion that the case should be reversed.

However, I go further, and adopting a contrary interpretation of the Act, towit, that such demand letters could be properly written by the Alcohol and To-

bacco Tax Unit asking for information as to all sales of sugar in designated quantities of a *future* occurrence, and even under this interpretation, this case should be reversed. Having received the letters from the Alcohol and Tobacco Tax Unit, the plaintiff brings this suit, maintaining that it is a law-abiding corporation, that compliance would work tremendous additional expense on the plaintiff in order to comply with the demands made of it, that it, the plaintiff, would be grievously damaged in its good reputation among its present and prospective customers by having to gain from the customer all the information about the customer, which the letters demand; maintaining that such letter to it would affect, to its disadvantage, the plaintiff's ability to make sales in the future, inasmuch as a customer would, under ordinary circumstances, pass on to a competitor, who could sell to the customer without having to give to the selling merchant all this type of information, and with this position justifiably taken by the plaintiff, the Court is asked to inquire into the justification of the Alcohol and Tobacco Tax Unit for such action taken by it as to the plaintiff. In the complaint, this corporation was entitled to maintain, as I have stated, to-wit, that it was a law-abiding corporation, and that the Court should inquire into whether the plaintiff was in fact itself conspiring with others in knowingly aiding the illegal manufacture of distilled spirits, or whether the plaintiff was unduly aiding an alleged moonshiner in his purchase of unusually large quantities of sugar. By this suit, the plaintiff was entitled to a judicial inquiry on the matter of unjust discrimination, in that all the grocers in the area had not been ordered to give this requested information, the complaint presenting a clear case of alleged discrimination in that the demands were not made of all of the grocers in the area, to the serious disadvantage of this plaintiff. There was a prayer in the complaint not only for a permanent injunction, but also for a temporary injunction. Compliance temporarily would seriously damage the plaintiff in an irreparable manner. At the hearing, nothing was produced, either by cross-examination of the plaintiff, or by independent evidence from the Alcohol and Tobacco Tax Unit, to warrant the selection by the Alcohol and Tobacco Tax Unit of this plaintiff for the giving of such information, and not requiring it of the plaintiff's competitors. The record warrants the conclusion that the plaintiff would be greatly damaged during the interval before a final hearing on the prayer for a permanent injunction.

In conclusion, I am of the opinion that the letter from the Alcohol and Tobacco Tax Unit as to *future* sales was not warranted by the statute. This alone, in my judgment, would warrant the reversal of this case. But further, I am of the opinion that under a construction of the statute, which would include request for information as to *future* sales, that this plaintiff was entitled to a temporary injunction, since there was nothing in the record calculated to justify the Alcohol and Tobacco Tax Unit in picking out this plaintiff from all the grocers in the area to require of it the giving of such information as to *future* sales.

I would reverse the case and remand to the District Court, directing the granting of the temporary injunction, or requiring that the Alcohol and Tobacco Tax Unit produce some evidence which would justify the demand from the plaintiff for the giving of such reports, which its competitors, or some of them, were not so required to give.