## ALTON R. CO. v. TUCKER et al.
### No. 10619.

Circuit Court of Appeals, Fifth Circuit.
Nov. 29, 1943.
Rehearing Denied Jan. 19, 1944.

J. W. Gormley and O. O. Touchstone, both of Dallas, Tex., for appellant.

Frank A. Leffingwell and Ralph W. Currie, both of Dallas, Tex., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant was the terminal carrier, Missouri-Kansas-Texas R. R. Co. of Texas the initial carrier of a shipment by appellees of three cars of sacked onions from Garland, Texas, to Chicago, Ill. On one car the freight was paid at destination. On the other two cars the freight was partly paid by a sale of the onions, leaving $342.69 unpaid, for which appellant sued appellees on July 3, 1942. On agreed facts and undisputed testimony the District Judge held the appellant had no right of action against appellees; and if it had, it arose on July 1, 1939, and was barred by the three-year limitation on suits by carriers for their charges found in Section 16(3), Title 49, United States Code Annotated.

The bills of lading (uniform domestic straight bills) are each for 510 sacks of onions in a designated car, received from appellees and consigned to appellees at Chicago, Ill., with appellant named as connecting carrier. The bills made express mention that the carrier should not deliver without payment of charges. In two days, June 30, 1942, the cars were in appellant's hands in Chicago. Appellees as consignees were not to be found there, and telegraphic correspondence with them followed. The important messages being these: At 9:15 A. M. on July 1, appellees telegraphed appellant: "Disregard all previous wires and release 91097, 85202, 88017 to Horwitz Bros." The numbers referred to the three cars. The cars were tendered to Horwitz Bros. on July 1, which was Saturday. On July 5 Horwitz Bros. advised that they were taking 85202, and paid the freight on it, but refused the other two cars and asked that shippers be asked to handle disposition of them. Appellant at once telegraphed appellees: "Exchange wires July 1, 91097, 88017, and 85202 released Horwitz Bros. They are handling 85202 and advise we handle with you for disposition 91097 and 88017. Rush disposition." Appellees wired

appellant the next morning, July 6, "Release Horwitz Bros. from 91097 and 88017 and handle for us yourselves. Remit proceeds after expenses are deducted." Appellant replied: "Will handle onions in 91097 and 88017 to best advantage, but do not think freight charges will be realized." From no want of diligence in the carrier the onions were undergoing bacterial decay, and when sold through United Produce Company brought not enough to pay freight, of which statements were made to appellees, and bills rendered for the balance of freight, which they refused to pay.

When the consignees named in the bills of lading could not be found by the terminal carrier it was its duty to notify the consignors and to obtain further instructions as to delivery. Appellees being owners, shippers and consignees could surely give such instructions. They appointed Horwitz Bros. to receive delivery, and delivery was at once on July 1, tendered them. After a delay for which appellant was in no wise to blame, and which included a Sunday and a holiday, delivery was accepted and the freight paid on one car and refused on the other two. As to these, the tender of delivery having proved abortive, further instructions were asked and given, the effect of which we think was to appoint appellant the agent of appellees to accept delivery of the two cars and dispose of their contents for appellees. They were disposed of accordingly on July 6. A delivery was on that date effected to appellees, the original consignees. The tender to Horwitz Bros. was not delivery, and the witnesses so testify. The bills of lading contain the provisions construed in Michigan Cent. R. Co. v. Mark Owen & Co., 256 U.S. 427, 41 S.Ct. 554, 65 L.Ed. 1032, where it seems to be held that placing the car and allowing a partial unloading was not delivery of the remaining goods. Here none were accepted or unloaded from these cars. The custody of and dominion over the onions in the rejected cars remained in appellant as carrier until later transferred to appellant as agent for the consignees.

It may be true that appellees were liable for the freight to the initial carrier on their contract for carriage, being owners of the goods as well as shippers. Compare Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L. Ed. 900, where the non-owning shipper was held not so liable. In the same case it is broadly held that "the consignee becomes liable as a matter of law for the full amount of the tariff charges, whether they are demanded at the time of delivery or later." Cited as authority therefor is Pittsburg, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151, where the terminal carrier was given a recovery against the consignee. To the same effect is New York Cent. & H. R. Co. v. York & Whitney, 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016. The Interstate Commerce Act, Section 3, par. (2), Section 6, par. (7). 49 U.S.C.A. §§ 3(2), 6(7), requires that the published rates be fully collected, and that they be collected before delivery is made or possession relinquished of the goods, and the courts require that if not then collected they shall be sued for. The liability to the delivering carrier of the consignee accepting the goods is established by many other cases cited under Note 4, 49 U.S.C.A. § 3 (2), among them one by Judge Hutcheson, Galveston, H. & S. A. R. Co. v. Lykes Bros., D.C., 294 F. 968, and one by the writer, Western & A. R. Co. v. Underwood, D.C., 281 F. 891, whose authority we are not inclined to dispute. Appellees, not having paid the initial carrier, are liable to pay the delivering carrier.

The applicable limitation Act is 49 U.S.C.A. § 16, par. (3): "(a) All actions at law by carriers subject to this Chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after. * * * (e) The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after." The meaning of the latter quotation is that if there be delivery the date of delivery is to control, but if delivery is not accepted, the date of the tender of delivery is to control. Thus construed, the "cause of action accrues" really in both instances at the controlling date. To make the tender control when delivery is accomplished would make the language about a delivery ineffective, because a tender of delivery always precedes a delivery. In this case, while delivery was tendered as early as July 1, the delivery was not completed till July 6. On the latter date limitation began to run. The suit was in time. The judgment is reversed and, the amount due being fixed by stipulation, the cause is remanded to the District Court with direction to enter a judgment therefor.