Angus J. DePINTO, Hjalmar B. Landoe, Francis I. Sabo and Edwin B. Pegram, Elmer W. Duhame, Appellants,

v.

PROVIDENT SECURITY LIFE INSURANCE COMPANY and John S. Gorsuch and Albert J. Doig, Appellees.

No. 18245.

United States Court of Appeals Ninth Circuit.

Oct. 1, 1963.

Rehearing Denied Nov. 20, 1963.

See also, 323 F.2d 839.

O'Connor, Anderson & Westover and John P. Otto, Phoenix, Ariz., for appellant Duhame.

George W. Botsford, T. W. Shumway, Guy C. Wilson and Donald Maxwell, Scottsdale, Ariz., for appellants Sabo and Pegram.

Joseph B. Gary, Bozeman, Mont., for appellant Landoe.

Evans, Kitchel & Jenckes, Herbert Mallamo and Joseph S. Jenckes, Jr., Phoenix, Ariz., for appellant DePinto.

W. Lee McLane, Jr. and Nola McLane, Phoenix, Ariz., for appellees.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

This suit, in the nature of a stockholder's derivative action, was commenced by John S. Gorsuch, then a stock-

holder of United Security Life (United), an Arizona stock insurance corporation. Named as defendants in the amended complaint were United, American Security Investment Co. (American), United Finance Corporation, Angus J. DePinto, Hjalmar B. Landoe, Francis I. Sabo, Edwin B. Pegram, Elmer W. Duhame, and the eight other individuals listed in the margin.[1]

The theory of the suit was that, by reason of fraud, negligence and breach of fiduciary duty, unjust enrichment and conversion on the part of the personal defendants, assets of United were diverted from that corporation in connection with its purchase of 30,800 allegedly worthless shares of American.[2]

DePinto, Landoe, Sabo, Pegram, Duhame and several other defendants answered the amended complaint with general denials. DePinto also asserted affirmative defenses of laches and estoppel based upon the merger of United with Provident Security Life Insurance Co. (Provident), another Arizona insurance stock corporation, subsequent to the commencement of the action. Each of the five personal defendants named above also filed cross-claims against other defendants, and Sabo and Pegram filed a derivative cross-claim against several defendants, for the benefit of American.

After a trial with what the district court finally determined to be an advisory jury, the court entered a judgment in favor of United against all of the personal defendants, except Patrick J. Kelly, in amounts ranging from $308,000 to $314,-794.19. Niesz, Pegram, Sabo, Landoe, Duhame, DePinto, Ballantyne and Croydon appealed.

We reversed, holding that a merger which United had consummated with Provident after the action had been commenced deprived Gorsuch of standing as a stockholder of United and deprived United of capacity to be sued, and standing as the real party in interest. In our decision, however, we suggested that the lawsuit could be saved by a reconstituting of parties, and remanded the cause to provide an opportunity for this to be done. Niesz v. Gorsuch, 9 Cir., 295 F.2d 909.[3]

Following the remand, Albert J. Doig, a citizen of California who was then a former stockholder of United and a present stockholder of Provident, filed an application for leave to intervene as a plaintiff. He also moved for an order joining Provident as a party defendant. Provident moved to intervene and to be substituted as plaintiff in place of Gorsuch. The court permitted Doig to intervene as a party plaintiff and Provident as an additional party plaintiff.

DePinto, Landoe, Sabo, Pegram, and Duhame filed answers to Doig's complaint in intervention and Provident's amended and supplemental complaint in intervention. Each asserted general denials of the essential allegations of these complaints. Duhame and DePinto also advanced certain affirmative defenses, and cross-complained against other defendants, except each other, for contribution. This was on the theory that their liability, if any, was vicarious and secondary to that of the other defendants. Several proposals to amend or supplement the original findings of fact were submitted. Doig moved that Provident be realigned as a party defendant and

1. James E. Kelly, L. N. Kelly, Patrick J. Kelly, Nina Dunn, J. L. Jenkins, Roslyn B. Croydon, Vernon E. Niesz and John D. Ballantyne.

2. In the original complaint, recovery of $308,000 for the benefit of United was sought. In an amended complaint additional claims of $45,514.51 and $109,723.-82 were made against some of the defendants. As the pretrial order was framed, recovery in the amount of $314,794.19 was sought from all defendants. In addition,

recovery of $39,339.59 was sought from several defendants because of alleged unauthorized expenditures made by United on behalf of defendant James E. Kelly and members of his family.

3. We also directed that, in the event the cause was re-established by the joinder of indispensable parties, substitute or supplemental findings be entered covering a number of matters concerning which the original findings were deficient.

various other motions were made. A hearing was thereafter had at which evidence was received.

In a memorandum decision and order thereafter entered, the district court re-aligned Provident as a defendant, holding that it was hostile to the claims asserted on its behalf in this suit. The court dismissed the cross-claims of De-Pinto and Duhame on the ground that neither of them qualifies as having only secondary liability. The court re-adopted its original findings of fact and reaffirmed its ˌoriginal decision. It specifically held that DePinto, Landoe, Sabo, Pegram and Duhame had been guilty of gross negligence and that all of them except Landoe breached fiduciary duties in connection with the transaction involving the diversion of United's funds.

Supplemental findings of fact and conclusions were entered, together with a judgment in favor of Provident and against the same twelve personal defendants against which the original judgment had run, in amounts again ranging from $308,000 to $314,794.19. The five defendants last named above have appealed.

Both Doig and Provident appear here as appellees, being represented in this court by the same counsel who have filed a joint brief on their behalf.[4]

■ The first question presented is whether the district court erred in permitting Doig to intervene as a party plaintiff in the remanded proceedings.

Doig sought intervention as a party plaintiff so that the remanded proceeding could continue, as it had been up until then, a secondary action by a shareholder of a corporation. Rule 23(b), Federal Rules of Civil Procedure, provides that the complaint of one who seeks to prosecute such an action shall set forth the efforts of the plaintiff to secure from the corporation the action he desires and the reasons for his failure to obtain such action, "or the reasons for not making such effort."

It is not alleged in Doig's complaint that any demand was made upon Provident to intervene as plaintiff.[5] However, several reasons are stated therein for not making such effort.[6] But appellants argued that these reasons are legally in-

4. On the same day that the district court rendered this judgment it also rendered judgment in Gorsuch v. Provident Security Life Insurance Co., in which Gorsuch sought to have the merger between United and Provident declared invalid. The court so held, and concluding therefrom that United is a viable corporation still in existence, ordered Provident to account to United for all of the latter's assets which it had received, together with the income derived therefrom. Provident appealed from that judgment, and we are today deciding that appeal sub nom., Provident Security Life Insurance Co. v. Gorsuch, 9 Cir., 323 F.2d 839. The judgment of the district court therein is being reversed and the cause is being remanded for further proceedings.

The appeal in a second related case, Mauser v. United Security Life, No. 16261 in this court, is being held in abeyance pending final disposition of the instant case, and Provident v. Gorsuch. The Mauser suit is a secondary action by two policy-holders of United, acting on behalf of United, to recover $314,794.19 from various personal and corporate defendants, and has once before been in this

court. See Mauser v. United Security Life, 9 Cir., 267 F.2d 3.

5. Doig first filed his application on November 6, 1961. But this was premature as the mandate of this court following the former appeal was not filed until December 11, 1961. On December 14, 1961, Doig moved for leave to withdraw and re-file the application, which motion was subsequently granted. Provident filed its motion to intervene and for substitution on February 8, 1962.

6. The pertinent allegations contained in the complaint in intervention, filed November 6, 1961, and refiled March 8, 1962, read as follows:

"48. Demand by plaintiff Albert J. Doig that the Board of Directors of Provident Security Life Insurance intervene in this action was not made, and would have been futile, because the members of the Board of Directors have remained inactive and have not intervened in this action although:

"(a) They have since February 7, 1959, or before had knowledge of the acts herein alleged and complained of.

"(b) They have since November of 1958 had knowledge of the action commenced

sufficient to warrant Doig's intervention as a party plaintiff.

The courts are in some disagreement as to what reasons will be deemed sufficient to excuse the failure to make a demand for corporate action.[7] While Duhame and Doig cite cases which reflect their respective views as to this, we accept, as a fair statement of the rule, this expression in Cathedral Estates, Inc. v. Taft Realty Corp., 2 Cir., 228 F.2d 85, 88:

> " * * * It is clear that under Rule 23(b) and its precedessors a demand need not be made on the directors or shareholders where such a demand would be 'futile,' 'useless,' or 'unavailing,' e. g., Delaware & Hudson Company v. Albany & Susquehanna Railroad Company, 1909, 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862; Hyams v. Calumet & Hecla Mining Co., 6 Cir., 1915, 221 F. 529, 538; Whittaker v. Brictson Mfg. Co., 8 Cir., 1930, 43 F.2d 485, 489; Dana v. Morgan, D.C.S.D.N.Y.1914, 219 F. 313, 314–15, affirmed 2 Cir., 1916, 232 F. 85; Cohen v. Industrial Finance Corporation, D.C.S.D.N.Y. 1942, 44 F.Supp. 491, 495; 3 Moore's Federal Practice 3525–26. And where the directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made. * * * "

In determining whether circumstances of this kind exist in a particular case, the normal procedure is to look solely to the allegations of the complaint. But in this case, before acting upon Doig's motion to intervene, the district court received evidence in the form of testimony and exhibits which it considered in determining whether a demand upon Provident to intervene would have been futile.

The court found, on the basis of this evidence and the whole record that counsel for Provident had certain conflicts of interest, there was belated and ineffective concern of Provident in the litigation, a substantial part of Provident's complaint in intervention had been prepared by counsel for an adverse party, and there had been included in this complaint by Provident allegations tending to exculpate an adverse party. In view of these facts the court indicated that it was not satisfied that Provident's application was made in good faith with the bona fide intent and purpose to continue vigorous prosecution of the litigation for the use and benefit of Provident stockholders.

Considering the complaint as amended to conform to the proof received on this question we think it amply sustains the conclusions drawn by the district court and sufficiently demonstrates that a demand upon Provident to prosecute the case effectively would have been futile. We therefore hold that the court did not err in permitting Doig to intervene as a party plaintiff under Rule 23(b).[8]

by plaintiff John S. Gorsuch and since February 7, 1959, known of the continued pendency of this action.

"(c) They have since February 7, 1959, known that the cause of action asserted by plaintiff John S. Gorsuch became an asset of Provident Security Life Insurance Company on the effective date of the merger between United Security Life and Provident Security Life Insurance Company.

"(d) They have since February 7, 1959, known that on the effective date of the aforesaid merger United Security Life ceased to exist, and that thereafter no judgment could be rendered in favor of United Security Life on aforesaid pending cause of action."

7. The cases are reviewed in 3 Moore's Federal Practice, 2d ed., § 23.19, pages 3525–27. Professor Moore believes that "probably the most straightforward approach is to admit frankly that it lies within the sound discretion of the court to determine the necessity for a demand."

8. In granting Provident leave to intervene as an additional party plaintiff, the court stated that "(t)he true interest and status in the litigation of Provident will appear from its contentions and conduct in the further proceedings required to accomplish the directives of the Court of Appeals mandate."

Tending to confirm the district court's initial appraisal of the bona fides of

The next question presented is whether the action is barred by Arizona statutes of limitations. In this connection reliance is placed on A.R.S. § 12–542, providing a two-year limitation, and upon A.R.S. § 12–550, providing a four-year limitation.[9]

The claim accrued on October 18, 1957, when, it is alleged, $314,794.19 in the funds of United were diverted. The original complaint was filed by Gorsuch against United on November 4, 1958, well within two years of the accrual of the claim. But appellant calls attention to the fact that when the merger took place in the spring of 1959, United went out of existence. The Doig and Provident complaints in intervention were not filed until March 8, 1962.[10]

It is argued from these facts that Provident's complaint in intervention introduced a new claim not comprehended within Gorsuch's original complaint, and that the limitations applicable as against Provident run back to the time when the claim originally accrued. Under this view, the action is barred under either the two- or four-year Arizona statutes of limitations. Alternatively, it is argued that even if the Provident complaint did not introduce a new cause of action,

Gorsuch's action on behalf of United abated in the spring of 1959 when the merger was consummated, and Provident's complaint, filed three years later, is barred by the two-year Arizona statute of limitations.

■ We are not concerned with Provident's complaint in intervention, for the district court realigned Provident as a defendant. While appellants argue that this realignment was "meaningless and ineffective," we do not agree. Had Provident intended to make a bona fide attempt to enforce its rights as the successor to United, then the district court could not have realigned that corporation as a defendant. But, as related above, the court found that Provident did not so intend and the record, in our opinion, supports that finding. The district court did not abuse its discretion in realigning Provident as a defendant.

■ Appellants do not appear to argue that Doig's complaint in intervention is barred by the Arizona statutes of limitations, but if they do so argue, it is to no avail. Having intervened as plaintiff in a class action brought by Gorsuch, and having introduced no new cause of action therein, the filing of the Gorsuch complaint inures to his benefit.[11]

Provident's position as a plaintiff was the action of the court at the close of the remanded proceedings in realigning Provident as a defendant. The court said, in this connection:

"Since the intervention of Provident Security Life Insurance Company no evidence has been presented nor has any action been taken by Provident or its counsel indicating that Provident, in fact, is or should be treated as a bona fide plaintiff. This court is satisfied the management of Provident is hostile to the claims asserted on behalf of United Security Life Insurance Company and its stockholders, or at very best is apathetic thereto, and does not desire active and effective prosecution of such claims. * * *"

9. A.R.S. § 12–542 reads in part:
"There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:
* * * * *

"3. For trespass for injury done to the estate or the property of another.
"4. For taking or carrying away the goods and chattels of another.
"5. For detaining the personal property of another and for converting such property to one's own use. * * *"
A.R.S. § 12–550 reads:
"Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward."

10. On that date an order was entered authorizing the filing of the Doig and Provident complaints in intervention. As to the time of filings, see note 5.

11. See 4 Moore's Federal Practice, 2d ed., § 24.13 [2], pages 100–101. See, also, Jeter v. Sapp, 47 Ariz. 329, 55 P.2d 812, 814, which, however, was not a class action. The ruling we have made would not be warranted if the original complaint had been filed in the name of a non-

832

■ As established in Niesz v. Gorsuch, 9 Cir., 295 F.2d 909, Gorsuch lost his capacity to sue and United lost its capacity as defendant and its standing as the real party in interest when the merger was consummated. This did not, however, abate the action in the sense that all prior proceedings had gone for naught. It necessitated only reinstatement of the suit by joinder of indispensable parties within a reasonable time, as we ruled in Niesz (295 F.2d at page 913).

■ When an action is reinstated, the effect of the statute of limitations is to be determined by the date the complaint was originally filed, unless the result will be to inject a new claim.[12] As indicated above no new claim was injected in the further proceedings on remand.

We therefore hold that this action is not barred by the Arizona statutes of limitations.

The third question presented is whether appellants were deprived of their constitutional right to trial by jury.

■ Appellees point out that none of the appellants filed a demand for a jury trial prior to the original trial, and argue from this that they waived trial by jury.[13]

It is provided in Rule 38(d), Federal Rules of Civil Procedure, that the failure of a party to serve such a demand constitutes a waiver of trial by jury. But Rule 38(d) further provides that a demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties. It follows that failure to demand a trial by jury does not constitute a waiver if such a demand is withheld in reliance upon a demand filed by another party, and if withdrawal of the latter demand is not consented to.

■ Gorsuch, as plaintiff in the original complaint, filed a timely demand for a jury trial. At a subsequent pre-trial conference Gorsuch sought to withdraw this demand, his counsel stating that they "waive jury trial." Counsel for certain defendants then requested additional time to consider the matter of waiving a jury. The record does not indicate which defendants were represented by this request. In any event there is nothing in the record to indicate that, at that time, appellants DePinto, Landoe, Sabo and Pegram consented to the withdrawal of Gorsuch's demand.

However, counsel for Duhame advised the court at that time that Duhame "will waive jury." This constituted a consent by Duhame to the withdrawal of Gorsuch's jury demand. The record does not indicate any action at that time by the trial court with regard to Gorsuch's request to withdraw his demand for a jury. Subsequent events of record indicate, however, that no one regarded the demand as effectively withdrawn at that time, as to any of the appellants. As the result of a further pre-trial conference held on March 1, 1960, a minute entry was made reciting that all defendants except Duhame "do not waive jury trial at this time."

Later, but prior to trial, Gorsuch moved under Rule 39(a) (2), Federal Rules of Civil Procedure, to require a non-jury trial. This motion was made on the ground that a right to trial by jury does not exist under the Constitution or statutes of the United States in a stockholder's derivative action. All of the appellants resisted the granting of this motion, thus indicating that none of them consented to the withdrawal of Gorsuch's jury demand. As for Duhame, it indicated a change of position from

existent plaintiff. See the cases cited in 8 A.L.R.2d 6, annotation at 57. But even assuming that United was a plaintiff in the original action (it was actually a defendant), it was in existence when Gorsuch brought the action.

12. See Zimmerman v. Western Builders' & Salvage Co., 38 Ariz. 91, 297 P. 449,

450–451, Bryan v. Inspiration Consol. Copper Co., 23 Ariz. 541, 205 P. 904, 907–909.

13. We find in the record what amounts to a demand by DePinto for a jury trial, made after we remanded the case following the first appeal.

consent to the withdrawal of Gorsuch's demand to refusal to consent.

Since this change of position took place prior to the time the court, as related below, granted Gorsuch's motion for a non-jury trial, we see no reason why it should not be respected. The trial court was apparently in agreement with this view for the jury was instructed that the case was being tried non-jury "as to all defendants other than DePinto, Duhame, Niesz, Pegram, Sabo and Landoe."

We therefore hold that none of the appellants waived trial by jury.

At the time of the argument on the Gorsuch motion the court reserved ruling thereon. At the same time, however, the court announced that a jury would be impaneled, and that the verdict would be deemed advisory if the motion for a non-jury trial were ultimately granted. Accordingly, a jury was duly impaneled and as to all of the appellants and defendant Niesz, the trial proceeded as if it were a normal jury case. The remaining defendants, however, except for Patrick J. Kelly and American, who had failed to appear, had stipulated that as to them the case would be tried non-jury.[14] At the close of the evidence the court denied the several motions made by appellants and Gorsuch for directed verdicts subject, however, to a later determination of the legal questions raised by these motions, as provided in Rule 50(b), Federal Rules of Civil Procedure.

The jury returned a general verdict in favor of Gorsuch and United and against appellants Sabo, Pegram and Landoe, and defendant Niesz, in the sum of $20,000. Four special verdicts were also returned, as set out in the margin.[15]

In its memorandum decision thereafter entered the district court, proceeding on the assumption that appellants or any of them had a right to trial by jury, denied the motions of Sabo, Pegram and Landoe to set aside the verdicts and enter judgments in their favor. Proceeding on the same assumption, the court granted the motion of Gorsuch to set aside the verdicts and enter judgment for United against each appellant, and

14. The jury was so informed prior to final arguments at the end of the trial, and again in the court's final instructions. The forms of special verdicts which were given to the jury named only the appellants and Niesz. After the jury retired to deliberate on the verdicts, and after exceptions to instructions had been taken, the trial proceeded for the purpose of receiving additional evidence and a stipulation on the non-jury aspect of the case. Thus, because some defendants had stipulated to a non-jury trial, the court was required to enter findings of fact and conclusions of law dealing with all of the issues of the case, without regard to whether appellants were entitled to a jury trial.

15. "1. Did the specified defendant, in one or more particulars, proximately causing or contributing to loss and damage to the corporation United Security Life, with respect of transfer of the assets in question, breach a then existing fiduciary duty to said corporation? Defendant Niesz: Yes. Defendant DePinto: No. Defendant Duhame: No. Defendant Sabo: Yes. Defendant Pegram: Yes. Defendant Landoe: Yes.

"2. Was the specified defendant negligent as a director of United Security Life in one or more particulars proximately causing or contributing to loss or damage to said corporation with respect of transfer of the assets in question? Defendant Niesz: Yes. Defendant DePinto: No. Defendant Duhame: No. Defendant Sabo: No. Defendant Pegram: No. Defendant Landoe: Yes.

"3. Do you find the specified defendant to have been unjustly enriched with respect of transfer of the assets in question by funds, assets or other property of United Security Life? Defendant Niesz: No. Defendant Sabo: No. Defendant Landoe: No. Defendant Pegram: No.

"4. Do you find the specified defendant chargeable with fraud in any one or more particulars proximately causing or contributing to loss and damage to United Security Life with respect of transfer of the assets in question? Defendant Niesz: No. Defendant Sabo: No. Defendant Landoe: No. Defendant Pegram: No."

defendant Niesz, in the sum of $314,-794.19.[16]

The court further held, however, that actually appellants were not entitled to a jury trial in a stockholder's derivative action. Accordingly, the court, as a part of its memorandum decision, granted the earlier motion of Gorsuch to require a non-jury trial. The court determined that the jury verdict would therefore be treated as advisory only. As already indicated, the court did not accept this advisory verdict except on the issues of unjust enrichment and fraud. Findings of fact and conclusions of law were thereupon entered supporting the judgment for damages against the appellants in the amount of $314,794.19.

The first appeal herein was then taken, during the course of which appellants raised the question that they were deprived of their Constitutional right to a trial by jury. Because of our ruling on that appeal that indispensable parties were absent, we concluded that we could not then decide this jury question or the other substantive questions which were raised on that appeal. The jury question is now properly before us on this second appeal and is to be considered in the light of circumstances as they existed at the time of the first appeal.

■ Although this is a diversity suit, the right to a jury trial is to be determined as a matter of federal law. Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691. In making that de-

termination we also have in mind this admonition by the Supreme Court announced in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 501, 79 S.Ct. 948, 952, 3 L.Ed.2d 988:

" * * * Maintenance of the jury, as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."

It is provided in the Seventh Amendment that "(i)n Suits at common law," where the value in controversy shall exceed $20.00, the right of trial by jury shall be preserved. In Rule 38(a), Federal Rules of Civil Procedure, it is provided that the right of trial by jury as declared by the Seventh Amendment to the Constitution "or as given by a statute of the United States" shall be preserved to the parties inviolate.

There is no applicable statute providing for a jury trial in a stockholder's derivative action. It follows that appellants were entitled to a jury trial only if this is a suit "at common law" in the Seventh Amendment sense.

Arguing that this is such a suit, appellants concede that, in a derivative action, a stockholder must avail himself of the aid of a court of equity in order to get into court. They argue, in effect, however, that if the right therein sought to be asserted on behalf of the corporation is a legal right and if the remedy

---

16. In explanation of this action the court stated, in its memorandum:
" * * * It is impossible to discern any rational basis for these verdicts, in fact or in law, either as to the amount awarded plaintiff, or as to the defendants found liable whether considered in relation to plaintiff or in relation to defendants found not liable. In these circumstances, not only are the verdicts against the weight of the evidence but they are not supported by any evidence whatever and they are not justified by any applicable legal principle. To give effect to such verdicts would result in: (1) substantial injustice to the shareholders and policy holders of United Security Life and (2) unjust discrimination against those defendants found liable in contrast to those favored by the jury although each was substantially culpable in breach of fiduciary duty and negligence proximately contributing to causing damage greatly in excess of the amount specified in the general verdict. In federal practice the trial judge not only has the authority to set aside verdicts of the character described, but it is his affirmative and positive duty to do so, whether or not the case be triable by jury as a matter of right. Accordingly, except for the findings of the special verdict with respect of fraud and unjust enrichment, each and both of the general and special verdicts must be and hereby are set aside and given no effect."

sought is monetary damages, it is a right and remedy characteristic of a suit at common law. In this event, appellants urge, the suit ought to be regarded as one at common law insofar as all issues pertaining to this corporate right and remedy are concerned, thereby entitling such a stockholder, or those he sues, to a jury trial as guaranteed by the Seventh Amendment.[17]

Rounding out this argument, appellants contend that the corporate right sought to be asserted by Gorsuch in this particular derivative action is a legal right, and point out that Gorsuch sought only money damages.

Prior to the promulgation of the Federal Rules of Civil Procedure, a court sitting in equity could retain jurisdiction even with regard to legal remedies which became available. American Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377, 81 L.Ed. 605. Consistent with this principle, courts of equity, exercising a jurisdiction separate from courts of law were, in some cases, allowed to enjoin subsequent legal actions between the same parties involving the same controversy. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 507, 79 S.Ct. 948, 3 L.Ed.2d 988.

Thus it may be, although we are not called upon to decide, that prior to the Federal Rules of Civil Procedure, a court exercising equity jurisdiction in determining whether a stockholder had standing to prosecute a derivative action could, in the continued exercise of equity jurisdiction, proceed to determine the substantive questions, thereby precluding a jury trial on any legal issues which might be involved.

██ But at least since the promulgation of the Federal Rules of Civil Procedure, this principle has not had general application in the federal courts. Under Rules 1, 2 and 18, Federal Rules of Civil Procedure, the same court may try both legal and equitable causes in the same action. Beacon Theatres, Inc. v. Westover, 359 U.S. at page 508, 79 S.Ct. at 955, 3 L.Ed.2d 988. As pointed out in Beacon, legal and equitable issues can be tried at the same time, the jury (if one has been demanded), rendering a verdict on the legal issues, and the court rendering a decision on the equitable issues.[18]

██ Thus, except under most imperative circumstances, a right to a jury trial on legal issues may not now be denied to a federal litigant on the ground that the case reached court only through equity, or because equitable rights are

17. Before developing this argument appellants conceded that there was authority for the proposition that the parties to a stockholder's derivative action are not entitled to a jury trial as a matter of right. They cite Steinway v. Griffith Consolidated Theatres, Okl., 273 P.2d 872, and cases referred to therein, as exemplifying such authority. Steinway and the cases therein cited, however, were concerned with the right to a jury trial in the courts of Oklahoma, in view of certain statutes and constitutional provisions of that state. The Seventh Amendment was not involved and no federal case bearing upon the right to trial by jury was cited. Appellees cite Neff v. Barber, 165 Wis. 503, 162 N.W. 667, for the same proposition as Steinway. But, like Steinway, Neff was concerned only with the right to a jury trial in state courts.

18. In Beacon, 359 U.S. at page 510, 79 S.Ct. at 956, 3 L.Ed.2d 988, the court indicated that a trial court has a limited discretion to order a trial first on the equitable issues, saying:

"If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court,[17] [17 See Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 798–799, 148 A.L.R. 226; cf. The Genesee Chief v. Fitzhugh, 12 How. 443, 459–460, 13 L.Ed. 1058.] that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial."

involved, or because the legal issues are "incidental" to the equitable issues,[19] or because substantive equitable remedies are sought, or by the device of trying the equitable issues first.[20]

A stockholder's derivative action is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty. Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067. The aid of equity is needed in order to establish the shareholder's right to sue in the corporate stead. Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 2 Cir., 202 F.2d 731, 734, 36 A.L.R.2d 1336. But the claim set up is that of the corporation.[21]

In order to determine whether appellants were entitled to a jury trial in this derivative action, it is therefore necessary to ascertain whether any of the claims asserted against them on behalf of the corporation are of a kind which, if asserted by the corporation, would be cognizable in a suit at common law. If so, and if the judgment which has been entered, insofar as can be determined rests on claims of that kind, there has been a denial of trial by jury as guaranteed by the Seventh Amendment and appellants have been aggrieved thereby.

Nine counts are set forth in the amended complaint, but only counts VI, VII and VIII involve any of the appellants. The only relief sought against any of the appellants in these counts is money damages. As modified or enlarged by the pre-trial order, the claims against all of the appellants are predicated on fraud, negligence and breach of fiduciary duty. In addition, the claims against all appellants except Duhame are predicated on conversion and unjust enrichment.

The judgment on appeal is not, as to any of the defendants, based on fraud, unjust enrichment or conversion. Therefore none of the appellants is aggrieved because they did not have a jury trial on those issues. One ground for the judgment, applicable to all of the appellants, is gross negligence. Another ground, applicable to all appellants except Landoe, is breach of fiduciary duty.

An action brought by the corporation to recover damages against former officers or directors on the ground of negligence would be cognizable in a suit at common law. Kelly v. Dolan, 3 Cir., 233 F. 635.[22] Thus all appellants were denied a jury trial on an issue cognizable in a suit at common law. Landoe was nec-

---

19. In Dairy Queen, Inc. v. Wood, 369 U.S. 469, at pages 470–471, 82 S.Ct. 894, at page 896, 8 L.Ed.2d 44, it was pointed out that the view that the right to a trial by jury may be lost as to legal issues where those issues are characterized as "incidental" to the equitable issues, has not prevailed since Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358, was decided in 1891.

20. See Dairy Queen, Inc. v. Wood, 369 U.S. at 472–473, 82 S.Ct. at 897, 8 L.Ed.2d 44; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510–511, 79 S.Ct. 948, 3 L.Ed.2d 988; Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5 Cir., 294 F.2d 486, 488–491.

21. Koster, supra, 330 U.S. at page 522, 67 S.Ct. at 830, 91 L.Ed. 1067; Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 28, 36 S.Ct. 233, 60 L.Ed 505.

22. In Fleitmann, note 21 above, it was held that because such a claim asserted on behalf of the corporation was legal in nature, it could not be maintained for the corporation in a derivative suit, since then the defendant would be denied a jury trial. But later it was pointed out in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, that under the present rules legal and equitable issues can be tried in the same action and that there not only can, but must, be a right of jury trial as to such legal issues. Accordingly, since Beacon Theatres, it has been held that a derivative suit will lie to assert a legal right on behalf of a corporation. Rogers v. American Can Company, 3 Cir., 305 F.2d 297, 307 et seq.; Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 202 F.2d 731, 734, 36 A.L.R.2d 1336. While the legal rights involved in the cited cases relate to violations of the antitrust laws, the underlying principle is applicable whatever the nature of the legal right may be.

essarily aggrieved by this denial since, as to him, this was the only basis of the judgment.

The court having expressly found that none of the appellants was guilty of fraud, the conclusion seems inescapable that the finding that DePinto, Sabo, Pegram and Duhame breached fiduciary duties owed to United actually rests upon a finding of gross negligence. The conclusions of law dealing with the question of breach of fiduciary duty lend support to this view. Directors, it is there stated, are required to discharge their duties with good faith, exercise diligent care and skill, devote reasonable attention to the corporate affairs, take reasonable precautions against neglect and fraud, supervise corporate affairs, attend to the business of the company, avoid acting as figureheads, know what is transpiring. The court concluded that De-Pinto, Sabo, Pegram and Duhame were grossly remiss in these respects.

■ Having in mind the necessity of scrutinizing, with utmost care, any seeming curtailment of the right to a jury trial,[23] we hold that where a claim of breach of fiduciary duty is predicated upon underlying conduct, such as negligence, which is actionable in a direct suit at common law, the issue of whether there has been such a breach is, subject to appropriate instructions, a jury question. We therefore conclude that, in the context of this case, the question concerning breach of fiduciary duty, as well as negligence, should have been submitted to the jury.[24]

It follows that, as to all of the appellants, the judgment rests upon issues which appellants were entitled to have submitted to a jury, and upon findings which appellants were entitled to have made by a jury. The trial court therefore erred in ruling that the jury verdicts were advisory only, and in basing the judgment upon court-made findings of fact.

But, as appellees point out, these were alternative rulings and actions. The trial court, proceeding on the alternative assumption that appellants were entitled to a jury trial, set aside the jury verdicts and entered judgment in accordance with plaintiff's motion for a directed verdict.[25] Thus judgment was granted against each of them in the amount of $314,794.19, notwithstanding the fact that the verdicts exonerated DePinto and Duhame of all liability, and as to Sabo, Pegram and Landoe, awarded appellees only $20,000.[26]

Appellees argue that a trial court may so deal with jury verdicts where the evidence warrants such action and that here the record amply supports the action taken by the court. Thus, contend appellees, appellants have no grievance under the Seventh Amendment or otherwise.

■ Federal practice does not permit the use of additur in cases where the amount of damages is disputed. Thus, if the trial court here, finding the verdict inadequate as to the three appellants against which verdicts were obtained, had granted a motion by plaintiff for a new trial unless defendants would consent to an increase in an amount fixed by the court, and defendants had agreed thereto, denial of plaintiff's motion on

23. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 501, 79 S.Ct. 948, 3 L.Ed.2d 988, quoted above.

24. "It is therefore unnecessary to determine, on the assumption that the question of breach of fiduciary duty is cognizable only in equity, whether the judgment as to DePinto, Sabo, Pegram and Duhame sufficiently rests thereon so that it can be said that they were not aggrieved by the lack of a jury trial on the negligence issue.

25. The action is described in note 16 and the associated text of the opinion. This alternative ruling was purportedly pursuant to Rule 50(b), Federal Rules of Civil Procedure.

26. As to Landoe, the jury, finding of liability rested on a special verdict that he had breached a fiduciary duty and had been negligent. As to Sabo and Pegram, the jury finding of liability rested on a special verdict that they had breached their fiduciary duties.

that ground would violate the Seventh Amendment.[27]

■ What the trial court did in the instant case was not additur in the technical sense. There was no motion by plaintiff for a new trial, the trial court did not grant such a motion unless defendants consented to the awards which were actually entered, the defendants did not consent to such awards, and plaintiff is not the party who is complaining about what the court did. But, insofar as the Seventh Amendment right to a trial is concerned, the reasoning which forbids additur just as clearly forbids an unconditional award of damages in excess of a jury verdict in an amount which, although agreeable to plaintiff, is not consented to by defendant.

In the case of additur, the Constitutional right of the plaintiff to a jury trial is brought to an end, while in our case the Constitutional right of the defendant is likewise terminated. What the court said, in Dimick, concerning such an impairment of a plaintiff's right to a jury trial is equally applicable where it is the defendant's right which is impaired.[28]

We therefore hold that the trial court was without power to enlarge the jury awards against Sabo, Pegram and Lan-

doe, or to make an award against De-Pinto and Duhame who had escaped any jury award.[29]

■ The trial court does have power, where the record warrants, to set aside a jury verdict for plaintiff, on the ground that the jury award of damages is inadequate. But when that is done the only recourse is to grant a new trial. Where this procedure is followed, however, the granting of a new trial is not reviewable prior to the second trial, as it is an interlocutory order. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147.[30]

While appellees did not move for a new trial, and the trial court did not purport to grant one, the necessary effect of the order setting aside the verdict was, for the reasons indicated, to grant a new trial. Accordingly, we cannot at this time concern ourselves with the question of whether the trial court should have set aside the verdicts.

It follows that all questions presented on this appeal pertaining to the evidentiary showing as to negligence of breach of fiduciary duties may not be decided at this time.

There are also certain other questions presented on this appeal.[31] But they are not of a kind which requires decision now

27. Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603; Silverman v. Travelers Ins. Co., 5 Cir., 277 F.2d 257, 264. 6 Moore's Federal Practice, 2d ed., § 59.05 [4], pages 3752–3755.

28. The court said in Dimick, (293 U.S. at 486–487, 55 S.Ct. at 301, 79 L.Ed. 603): " * * * where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict. When, therefore, the trial court here found that the damages awarded by the jury were so inadequate as to entitle plaintiff to a new trial, how can it be held, with any semblance of reason, that that court, with the consent of the defendant only, may, by assessing an additional amount of damages, bring the constitutional right of the plaintiff to a jury trial to an end in respect of a matter of fact which no jury has ever passed upon either explicitly or by implication? To so hold

is obviously to compel the plaintiff to forego his constitutional right to the verdict of a jury and accept 'an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess.' "

29. It is therefore unnecessary to consider whether the trial court also erred in finding appellants DePinto and Duhame liable, the jury having found neither of them liable.

30. An appeal will lie to determine whether a trial court had jurisdiction to grant a new trial. Chicago & Northwestern Ry. Co. v. Britten, 8 Cir., 301 F.2d 400, 401–402.

31. We refer to the questions of whether the judgment is excessive as to DePinto and Duhame to the extent of 38.79% because of the cancellation of American's stock held by United; whether the judgment is excessive as to DePinto in the

in order to provide guidance as to the remanded proceedings. Nor will they be presented here again unless plaintiff prevails in the further proceedings and then only if the judgment is of the same kind as that which is before us on this appeal. If these questions do arise again, they can best be dealt with on the record for that appeal.

The judgment is reversed and the cause is remanded for a new trial.

amount of six per cent because of Duhame's ownership of certificates of contingent interest; whether Provident is entitled to six per cent interest on the award from October 18, 1957; and whether DePinto and Duhame are entitled to indemnity against Pegram, Sabo, Landoe and certain other defendants.