PHILADELPHIA MARINE TRADE
ASSOCIATION

v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL 1291,
Appellant.

No. 15613.

United States Court of Appeals
Third Circuit.

Argued April 14, 1966.

Decided Aug. 11, 1966.

See also D.C., 243 F.Supp. 140.

Abraham E. Freedman, Philadelphia, Pa. (Martin J. Vigderman and Freedman, Borowsky & Lorry, Philadelphia, Pa., on the brief), for appellant.

Francis A. Scanlan, Philadelphia, Pa. (Kelly, Deasey & Scanlan, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

In this action to enforce an arbitration award under a labor management contract, the trial Court ordered enforcement and the defendant union appeals.

The plaintiff association is a non profit organization comprised of steamship owners, operators, stevedores and the like in the port of Philadelphia. The

union is the bargaining agent of the Philadelphia deep sea longshoremen. The bargaining agreement, dated February 11, 1965, applied retroactively from October 1, 1964 and expires September 30, 1968. On April 26, 1965, there was a dispute between the association and the union over the meaning of Section 10, sub. par. 6 of the agreement. The general caption of Section 10 is "Hiring System". Subparagraph (6) reads:

"(6) Gangs ordered for an 8 AM start Monday through Friday can be set back at 7:30 AM on the day of work to commence at 1 PM at which time a four hour guarantee shall apply. A one hour guarantee shall apply for the morning period unless employed during the morning period."

The matter was correctly referred to an arbitrator, Milton M. Weiss, Esq. There were three hearings, April 30, 1965, May 3, 1965 and May 5, 1965. At the start of the first hearing the Arbitrator stated:

"This hearing that we are conducting today, relating to interpretations of a clause of your new contract, from what I understand, between the parties, it has been agreed that it would be carried on in accordance with the usual procedures of The American Arbitration Association. Being a member of that panel, and having conducted hearings along these lines, I will proceed in the same fashion as we do in those cases."

He then said:

"I think maybe there are a couple of things I would like to say. I think all of us would like, perhaps, to resolve right in the beginning that it is understood between the parties that the determination made by the Arbitrator in this case will be final and binding."

To this **Mr. Freedman, counsel** for the Union, answered, "That is our understanding. As a matter of fact, that is the understanding of the agreement." Mr. Scanlan, counsel for the association, answered: "Yes. In accordance with the contract."

A thorough, well reasoned decision was filed by the Arbitrator June 11, 1965. In that opinion the Arbitrator properly stated the "Issue Involved" as follows:

"Whether the provisions in the Memorandum of Settlement referred to above, i. e. Section 10, subparagraphs 5 and 6, are to be considered together so that the Employer's right to set back a gang from 8:00 A.M. to 1:00 P.M. is conditioned *solely* upon the nonarrival of a vessel in port, or is the Employer's right under Section 10, subparagraph 6 to set back a gang without qualification?"

The Arbitrator ruled:

"It is the Arbitrator's opinion that this Section 10(6) of the Memorandum of Settlement dated February 11, 1965 is clear and unequivocal and should not be given meaning other than expressed. If the Arbitrator were to read into Section 10(6) the limitation urged on him by the Union, i. e. applicable only in case of non-arrival of a vessel in port, he would in effect be writing into the Memorandum of Settlement something which is not there. The Arbitrator has carefully reviewed the testimony as well as exhibits relating to the negotiations between the parties which resulted in their final agreement. It is quite obvious that the document finally agreed upon was the subject of much discussion and negotiation, and both parties had ample opportunity to modify and change these provisions before the final instrument was drawn. A review of the negotiations set forth above relating to Section 10(5) and 10(6) indicates clearly that there was much discussion and negotiation before the final draft which was contained in the Memorandum of Settlement dated February 11, 1965."

In making his Award, the Arbitrator held:

"The contention of the Employer, the Philadelphia Marine Trade Association, is hereby sustained and it is the Arbitrator's determination that Section 10(6) of the Memorandum of

Settlement dated February 11, 1965, providing gangs 'ordered for an 8 AM start Monday through Friday can be set back at 7:30 AM on the day of work to commence at 1 PM, at which time a 4 hour guarantee shall apply. A 1 hour guarantee shall apply for the morning period unless employed during the morning period,' may be invoked by the Employer without qualification.

"The contention of the Union, the International Longshoremen's Association, Local No. 1291, that Section 10 (6) of the Memorandum of Settlement dated February 11, 1965, referred to above, can only be invoked by the Employer because of non-arrival of a vessel in port, is denied."

On July 30, 1965 the Union refused to acquiesce in Nacirema Operating Company, one of the Association employers, setting back an 8:00 A.M. start of work to 1:00 P.M.

According to the testimony which was not denied, the President of the Union, Mr. Askew, advised the executive director of the Trade Association, Mr. Corry, that "the arbitrator's award only applied to non-arrival of a ship." Told by Mr. Corry that "The arbitrator's award applies without qualification," Mr. Corry testified that Mr. Askew replied, " 'It does not' and they were not going to live by it." Mr. Corry stated that Mr. Askew told him he would have to talk to the business agents. Mr. Corry said he did so, to Messrs. Johnson and Devine, that Mr. Johnson did most of the talking "—and Paul Johnson said that they were not going to abide by the arbitrator's decision on the setback, and Mr. Devine as much as said, 'Yes, that's right,' and that was the extent of my conversation with them."

On August 2, 1965, the Association filed a complaint against the Union in the District Court. This set out the labor agreement between the parties, the Arbitration Award, "that the Union does not agree with the Arbitrator's Award and does not intend to comply with the terms of such award." The complaint

went on to allege serious damage to the Employer, the owners and operators of the particular vessel and to the Port of Philadelphia. It stated that "The defendant's refusal to comply with the Arbitrator's Award constitutes a breach of the applicable provisions of the current Collective Bargaining Agreement between P.M.T.A. and the Union." It prayed for an immediate hearing and "an order enforcing the Arbitrator's Award" with " * * * such other and further relief as may be justified." The District Court issued an order to show cause to defendant, "why it has not complied with the Arbitrator's Award of June 11, 1965" and a hearing was set for August 3, 1965, 11 A.M. A motion was filed on behalf of defendant to dismiss the complaint upon the grounds it did not state a cause of action and that the Court was without jurisdiction to grant the relief sought which the motion called "injunctive".

At the hearing counsel for the plaintiff informed the Court that the action was under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) for enforcement of the Arbitration Award, above quoted, under the bargaining agreement between the parties which the union had refused to abide by in connection with the employer's attempted set back of work on July 30th and that the union's position was that it "would not abide by the arbitrator's award."

Counsel for the union told the Court "We, that is, the union, make no bones about the fact that they are unhappy with the arbitrator's award, but we realize that we are stuck with it." He insisted several times more that the union would live up to the arbitrator's award. After argument on the question of jurisdiction, the Court held it possessed jurisdiction. Contention was made for the union that the employees had to be notified by 7:30 A.M. of a set back. Actually, all the award mentioned about 7:30 A.M. was, as seen above, to repeat the language of 10(6) of the employment agreement providing that the gangs "ordered for an 8:00 A.M. start Monday

through Friday can be set back at 7:30 A.M. on the day of the work * * *." There is nothing regarding notification to employees by 7:30 A.M. In passing, that would be a physical impossibility where the set back itself did not take place until 7:30 A.M. This particular argument was not urged at the later hearing nor is it alluded to on this appeal.

At the August 3rd hearing the Court was advised by counsel for the plaintiff that because of the economic problem of keeping the ship idle, the objected to additional wages demanded had been paid and that the men had returned to work. The Court made the following statement:

"I will keep the matter in hand. I will keep the matter in hand as a judge. If anything arises, I will take jurisdiction, and whatever the situation is, we will handle it at that time.

"So if you don't want to present any more testimony today, on either part, we will just continue the hearing; that's all. It will be continued."

The question of the construction of the Arbitrator's Award again came before the Court on September 13, 1965. At that time the Court said to counsel on both sides:

"It was my recollection that at the testimony of the last time, I said that I would keep the case in my hands and continue it and hold the matter in my jurisdiction, and with that I think we closed the case.

"Now, I understand from Mr. Scanlan some other facts have arisen which were not in existence at the last time we came in because the men that had not been to work had returned to work at the time you came back for the final hearing. I understand other facts have arisen, so, Mr. Scanlan [counsel for plaintiff], we will give you the oar."

On that occasion four employers of the plaintiff had attempted to set back gangs under the Arbitrator's Award and Mr. Askew, President of the Union, or-dered the men to follow different procedures. Plaintiff's dilemma, as outlined to the Court, was that an order was needed requiring the Union to comply with the Award "because we cannot operate in this port if we are going to be continually harassed by the Union in taking the position that they are not going to abide by an Arbitrator's Award, and we cannot continue to live under a situation where from one day to another we do not know whether a similar announcement will be made telling the men not to report for work."

For the defense, it was again asserted that the Court had no jurisdiction, with the further argument that the Award only covered the one dispute then active, i. e. "Every dispute is a different case all by itself." At a further hearing on September 15, the subsequent events making the hearing necessary were narrated by witness for the plaintiff, Mr. Corry, the executive secretary of the Association, who testified, of the Union president's order to the men which in effect countermanded the employers' set backs and stopped work on the four ships concerned. Mr. Corry said that in a talk he had had with Mr. Askew, the latter told him that " * * * the set back only applied to the non-arrival of a ship and he wanted to rearbitrate." Mr. Evans, chief dispatcher for the Association, heard Mr. Askew give his countermanding order and so stated.

There was no testimony on behalf of the Union.

The Court's attention was specifically called to the various statements by counsel for the Union at the previous hearing to the effect that the Union would obey the Arbitrator's Award, particularly to counsel having said to the Court

" * * * And the arbitrator decided contrary to the union's position that this setback could be invoked for any reason, not only for non-arrival of a vessel or for inclement weather. It had been the union's position—it still is—although it is moot now—that the setback could only be for specific reasons, either for non-arrival of a vessel,

for inclement weather, or for compelling reasons like that which was not within the control of the employer."

It was claimed on behalf of the Union that the Arbitrator's decision governed only the single dispute at that time and did not apply to any other subsequent 10(6) problem. The second point presented was a repetition of the question passed upon by the Court at the first hearing i. e. a denial of jurisdiction on the ground that injunctive relief was being sought.

The Court, holding that the Arbitrator's Award was final and binding in its construction of Section 10(6) of the employment agreement, ordered that the Union specifically enforce it and that it comply with and abide by the said Award.

▉ Appellant argues that this is an injunction proceeding prohibited by the Norris-LaGuardia Act. It relies completely upon Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). That suit concerned an injunction to end the particular strikes involved and work stoppages on nine occasions over a period of almost two years. It categorically holds pp. 213 and 214, 82 S.Ct. p. 1338:

"The plain fact is that § 301, as passed by Congress, presents no conflict at all with the anti-injunction provisions of the Norris-LaGuardia Act. Obedience to the congressional commands of the Norris-LaGuardia Act does not directly affect the 'congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes' at all for it does not impair the right of an employer to obtain an order compelling arbitration of any dispute that may have been made arbitrable by the provisions of an effective collective bargaining agreement."

In that decision the Supreme Court, p. 212, 82 S.Ct. 1328, approved of its opinion in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, pp. 458–459, 77 S.Ct.

923, p. 919, 1 L.Ed.2d 972 (1957) which held:

"The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris-LaGuardia Act."

In 1960 in the case of United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, the Supreme Court again ruled that the District Courts, as here, have jurisdiction under Section 301 of the Labor Management Act to order compliance with Arbitration Awards. The Fourth Circuit Court of Appeals, 269 F.2d 327 (1959) had modified the judgment of the District Court as the Supreme Court said p. 599, 80 S.Ct. p. 1362 " * * ' * so that the amounts due the employees may be definitely determined by arbitration. In all other respects we think the judgment of the District Court should be affirmed." See also Textile Workers Union of America CIO v. American Thread Co., 113 F.Supp. 137, 141, 142 (D.Mass.1953), which was completely approved by the Supreme Court in Lincoln Mills, supra. Local 149 Boot and Shoe Workers Union, AFL–CIO v. Faith Shoe Co., 201 F.Supp. 234 (M.D. Pa.1962) where the Court sustained a § 301 action similar to the one at bar to enforce an Arbitrator's Award. New Orleans S.S. Association v. Longshoremen's Local 1418, 44 CCH Labor Cases 26,602 (E.D.La.1962) dealt with the same problem with the Court holding:

"However, the parties to the contract agreed to be bound by the decision of the arbitrator, and the plaintiff is entitled to have the award of the arbitrator enforced."

Under the facts and the law, the holding of the District Court that it had the jurisdiction to enforce the crystal clear judgment of the Arbitrator was sound and right. It was not in conflict with the Norris-LaGuardia Act but completely within the Lincoln Mills and Steelworkers opinions, supra, and a vital part of the all important enforcement of the spe-

cific performance of the admittedly agreed to arbitration clause in the labor contract before us.

Appellant also complains that the trial Court did not make findings of fact and conclusions of law and give reasons for the issuance of the order and to clarify the nature of the conduct compelled, allegedly in violation of F.R.Civ.P. 52(a) and 65(d).

■ The argument is without merit. Appellant's citations from this Circuit are founded on particulars radically different from those before us and are not comparable. We have already held that this is not an injunction suit. It is squarely under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. It alleges a breach by defendant of its labor contract with plaintiff in that the former refuses to comply with the Arbitrator's Award under said contract to its damage and asks for an order enforcing the Award; for specific performance of the Award. On August 3, 1965 when the matter had first been heard, because the men were back at work then under circumstances as outlined earlier, the Court said, "I will keep the matter in hand as a judge. If anything arises, I will take jurisdiction and whatever the situation is, we will handle it at that time." In accordance with this, on August 13, 1965 the attorney for the plaintiff reported the new situation to the Court, as above related and the Court thereafter held a hearing at plaintiff's request. This was still under the original order on defendant to show cause why it had not complied with the Arbitrator's Award. The decision disposed of the rule to show cause by ordering compliance with the Award on the part of defendant. Plaintiff urges that in those circumstances Rule 52(a) does not govern since in reality the decision was on plaintiff's motion under its rule to show cause. Under 52(a), findings of fact and conclusions of law are unnecessary on decisions on motions with the exception of involuntary dismissal motions under Rule 41(b). Plaintiff here makes an impressive point.

And the circumstance that defendant took its appeal the day after the order was and is important. Whether deliberate or not, it precluded the trial Court from entering findings of fact and conclusions of law even if they were required in this instance.

■ Above all, in the uncontradictable posture of this appeal the error, if any, of not filing findings of fact and conclusions of law was inconsequential. There was no dispute of fact, and no challenge whatsoever of evidence on behalf of the plaintiff. The sole opposition to plaintiff's proofs was the legal argument that the Court did not possess jurisdiction and that the Arbitration Award did not mean what it said and was not of the scope which had been definitely agreed to on behalf of the Union. Factual issues therefore were not validly before the Court and the record fully discloses the in effect admitted facts on which the order was based. Vol. 2b Barron & Holtzoff Federal Practice ad Procedure (Wright Rev.), § 1126 p. 500. The trial Court, on the legal points before it, merely determined the law from the uncontroverted facts, making the absence of formal findings of fact and conclusions of law excusable. United States v. Pendergrast, 241 F.2d 687 (4 Cir.1956); Rossiter v. Vogel, 148 F.2d 292 (2 Cir. 1945); Hurwitz v. Hurwitz, 78 U.S.App. D.C. 66, 136 F.2d 796, 148 A.L.R. 226 (1943).

■ Rule 65(d) F.R.Civ.P. deals with "Form and Scope of Injunction or Restraining Order." In pertinent part it reads:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * * *"

The order in question reads:

"AND NOW TO WIT, This 15th day of September, 1965, after hearing, it is hereby ordered, adjudged

and decreed that the Arbitrator's Award in the matter of arbitration between the Philadelphia Marine Trade Association and International Longshoremen's Association Local 1291, issued on June 11, 1965, be specifically enforced by defendant, International Longshoremen's Association Local 1291, and the said defendant is hereby ordered to comply with and to abide by the said Award."

As we have indicated this order is not an injunction. Nor can it be reasonably construed as a restraining order. All that it requires is that the defendant affirmatively enforce the Award and comply with and abide by it. It simply calls upon the defendant for specific performance of the Arbitration Award.

Even if it were assumed to be within Rule 65(d), under the facts, the language of the order is fundamentally in accordance with 65(a). Mayflower Industries v. Thor, 182 F.2d 800 (3 Cir. 1950), cert. den. 341 U.S. 903, 71 S.Ct. 610, 95 L.Ed. 1342 (1951), relied on by appellant had to do with an injunction issued under Rule 62(c) pending an appeal. Because no grounds were given for its issuance the injunction was dissolved. The case does not touch the special factors of this controversy. In any event if there is error with respect to 65(d), it is minor and in no way decisional.

Appellant's final point is that the action was moot because plaintiff failed to go to arbitration as required by the contract and because there was no authority to retain jurisdiction. This needs no extended discussion. The August third episode was not ended legally because the employer was forced to pay the extra money demanded under the economic compulsion of being unable to keep its ship idle. The Court continued the case for the time being against the possibility of a like practical condition arising. The wisdom of so doing developed when an identical type of work disturbance and of more serious proportions broke out on September 13th, was immediately brought before the Court and promptly concluded. The issue was the very same continuing quarrel regarding the governing labor agreement which directly affected the entire Port of Philadelphia.

The thought advanced that the litigation was moot because plaintiff refused to go to arbitration is out of line with the facts and the law. As has been seen the Arbitration Award was not to cover just a single wrangle under 10(6). The Award construed 10(6) itself and held generally regarding set backs that which it so plainly sets forth as above quoted. This, as was admitted for the Union, ended all attempted legitimate divergence of opinion regarding them. It was no failure to arbitrate on the part of the Association that necessitated the Court action. It was rather the deliberate decision of the Union to disregard the Award in the hope of in some fashion restricting it to the first incident of August 3rd, 1965.

The record in this appeal is free of any substantial error. The order of the trial Judge directing specific performance of the Arbitrator's Award was called for by the facts and law of the problem involved. It will be affirmed.