**TANKER SERVICE COMMITTEE, INC.,
et al., Plaintiffs,**

v.

**INTERNATIONAL ORGANIZATION OF
MASTERS, MATES AND PILOTS,
AFL-CIO, Defendant.**

**MARITIME SERVICE COMMITTEE,
INC., et al., Plaintiffs,**

v.

**INTERNATIONAL ORGANIZATION OF
MASTERS, MATES AND PILOTS,
AFL-CIO, Defendant.**

**Civ. A. Nos. 42954, 42955.**

United States District Court
E. D. Pennsylvania.

June 21, 1967.

Schnader, Harrison, Segal & Lewis, John W. Pelino, Philadelphia, Pa., for plaintiffs.

Richard H. Markowitz, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

FULLAM, District Judge.

In 1965, collective-bargaining agreements were entered into between the Defendant international union and various ship-owners, represented in the negotiations and in these actions by Plaintiff trade associations. Two basic agreements are involved, the "Atlantic and Gulf Coast Tanker Agreement of 1965–69" and a corresponding "Dry Cargo" agreement, both containing comprehensive arbitration provisions and explicit no-strike clauses.

For many months, there has been a serious dispute as to the interpretation and application of certain "parity" wage provisions of the agreements. Arbitration of this dispute was begun but not completed. Apparently, other avenues of approach were explored by mutual consent; at any rate, the arbitration proceedings were interrupted and had not yet been resumed when the Defendant began to cause a work-stoppage in direct violation of the no-strike clause.

The specific issue of the work-stoppage was then submitted to the Arbitrator, in proceedings stipulated to have been properly convened and conducted pursuant to the agreement. On June 14, 1967, the Arbitrator duly entered the following Award:

"By virtue of the power vested in me by the parties' agreement to arbitrate, I hereby award as follows:

"1. The concerted refusal of licensed deck officers on June 14, 1967 or thereafter to sign ship's articles or to perform their assigned functions aboard vessels under Atlantic & Gulf Coast contracts with any of the com-

panies on the list appended to this order is a violation of the parties' agreements and of the officers' obligations under these agreements.

"2. The oral or written communication by officers of the Organization to licensed deck officers represented by the Organization, requesting, directing or authorizing such licensed officers to refuse to sign ship's articles or to refuse to perform their assigned functions on vessels on or after June 14, 1967 is a violation of the Organization's obligations under the agreements.

"3. I order and direct that the concerted refusal to sign articles or to perform the duties of licensed deck officers aboard vessels of the Employers be ended at once, with a view to restoration of normal shipping operations within the shortest feasible time.

"4. I order and direct the International Organization and its involved local affiliates to act affirmatively to instruct its members to observe the no-strike provisions of their contracts and to instruct its members to sign on vessels of the Employers and to cease or refrain from any interference with the operation and sailing of said vessels.

"5. In this connection the International Organization is instructed to communicate forthwith by telephone or telegram with Local Unions and others whose cooperation may be needed in order to end the work stoppages now in progress and to withdraw the threats of continuing work stoppages."

The Defendant failed to comply with this Award, and announced its intention to continue the strike or work-stoppage until its "parity" wage-demands were met. Plaintiffs thereupon brought the present actions for confirmation and enforcement of the Award, seeking, inter alia, preliminary injunctive relief. Hearings were held on June 16 and 19, resulting in the entry of various orders from the bench and a more formal order on June 20, following the hearings. This Memorandum is filed in order to spread upon the record the reasons for the various actions taken.

The Defendant first sought to have these actions transferred to the Southern District of New York under 28 U.S.C.A. § 1404, on the theory that the Plaintiffs were guilty of forum-shopping. I refused to order the transfer, primarily because of the need for a speedy resolution of the controversy, but also in part because Plaintiffs had a right to select the forum, no great inconvenience would be involved, and the defense motion itself seemed to have a forum-shopping rationale.

On the merits, the essential facts are not in dispute. The arbitrability of the no-strike clause is conceded, as are the procedural validity of the Award and the Defendant's refusal to comply. The litigated question is the authority of this Court to grant enforcement.

■ By reason of § 4 of the Norris-LaGuardia Act (29 U.S.C.A. § 104), as interpreted in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Defendant cannot, in this private litigation, lawfully be enjoined from continuing the work-stoppage. But this does not mean the Defendant is immune from all forms of judicial intervention to encourage compliance with the Arbitrator's award, and I conceive it to be the task of the Court in this situation to attempt to fashion a remedy which ought to have that effect, without countering the Congressional mandate.

I read Philadelphia Marine Trade Association v. Int'l Longshoremen's Association, 365 F.2d 295 (3rd Cir. 1966), cert. granted, 386 U.S. 907, 87 S.Ct. 860, 17 L.Ed.2d 782 (1967) as adopting this approach, although it may go further and approve the use of injunctions as such, where a final arbitration award has been entered. If possible, I should have preferred to postpone decision in the present case until the Third

Circuit hears and decides the pending appeal from the contempt penalties subsequently imposed in *Marine Trade;* and until the Supreme Court disposes of the case pursuant to the grant of certiorari. Unfortunately, this course has not been available to me, by reason of current exigencies.

■ Termination of the work-stoppage without some reasonable prospect of resolving the underlying wage dispute seemed likely to be a short-lived as well as a short-range solution. There was no reason to refuse specific performance of at least that much of the Agreement, cf. *Victory Transport Incorporated v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354 (2d Cir.), cert. den. 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1964). I have therefore ordered the parties to resume the "parity" arbitration not later than 10:00 a. m. June 21, 1967.

■ I am satisfied also that damages may be assessed for failure to abide by the Award, and I do not believe such assessment need await the outcome of a separate action at law. But damage awards in labor cases tend to become just one more item for negotiation at the next round of bargaining, and it seemed desirable to minimize this possibility if the award of damages is to have coercive effect. To that end, I have directed that any judgment be subject to the control of this Court; that the Defendant may not be relieved therefrom except by order of Court; and that all payments be made into the registry or as directed by this Court.

By the same token, however, since the extent of Plaintiffs' damages, and the necessity for prompt recovery thereof, will be less overpowering if the work-stoppage ends forthwith, I am willing to reconsider the damage issue and vacate the partial judgment referred to below, if the Defendant complies with the Award, forthwith. Absent prompt compliance, further proceedings in this Court can determine the extent of the compensatory damages, and the full scope of relief to be afforded the injured parties.

■ There can be no question that the ship-owners have sustained and will continue to sustain enormous economic losses as a result of Defendant's noncompliance with the terms of the Award. While the evidence on this point has not been developed, enough does appear in the record, from uncontroverted affidavits and offers of proof, to justify the finding that the damages already greatly exceed the sum of $250,000. A partial Judgment in that amount has therefore been entered, subject to being vacated if Defendant obeys the Award by June 21, 1967, and subject to modification after further proceedings if the refusal to comply with the Award persists. I have concluded that this kind of a Judgment can be entered as a form of equitable relief under these circumstances, without a jury trial.

I have outlined herein the steps taken to date in these cases. Whether further proceedings looking toward enforcement of the Award will be required remains to be seen. The Court will retain jurisdiction.

To the extent that findings of fact are required in this situation, this memorandum is intended to contain them.