**GENERAL DYNAMICS CORPORATION, Plaintiff-Appellant,**

v.

**LOCAL 5, INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, AFL–CIO, Defendant-Appellee.**

**GENERAL DYNAMICS CORPORATION, Plaintiff-Appellant,**

v.

**LOCAL 5, INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, AFL–CIO,**

and

**Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, Defendants-Appellees.**

Nos. 72–1112, 72–1113.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1972.

Decided Nov. 15, 1972.

Lewis H. Weinstein, Boston, Mass., with whom David B. Ellis, Foley, Hoag & Eliot, Boston, Mass., and Carter W. Eltzroth, Gen. Counsel, General Dynam-

ics Corp., Quincy, Mass., were on brief, for appellant.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and HAMLEY*, Senior Circuit Judge.

COFFIN, Chief Judge.

These two appeals arise out of a dispute between the parties in the summer of 1969 over the interpretation of the seniority provisions in their collective bargaining agreement [the Agreement], signed in the spring of that year and effective until 1974. The dispute resulted in a work stoppage by members of the defendant Union and an arbitration award, pursuant to provisions of the Agreement, ordering the employees to return to work. Alleging non-compliance with the award, the plaintiff Corporation brought one suit for an order to enforce the award and another for damages resulting from the work stoppage. The district court, without opinion, granted the defendant's motion to dismiss in the first action and the motions for summary judgment in the second. The plaintiff appealed from both orders.

On July 25, 1969, the Corporation ordered the layoff of eleven machine shop employees, effective August 1. On July 31, approximately twenty-five machine shop employees did not return to work at the end of the lunch period, apparently in protest over the layoffs which the Union felt were not in accordance with the Agreement's seniority provisions. A meeting between the parties on August 1 resulted in the postponement of the layoffs and efforts to resolve the dispute. After the Union refused on August 19 to arbitrate the seniority issue, as the Corporation contends it had previously agreed to do, new notices of layoffs were sent out on August 22, to take effect the following Friday, the 29th.

On August 25, a grievance was filed on behalf of three machine shop employees and a walkout began which by the next day included practically the entire work force. After telegrams to both the national and local unions requesting them to take all reasonable steps to end the walkout produced no results, the Corporation initiated the expedited arbitration proceedings provided for by the Agreement. On August 27, Arbitrator Fallon rendered his award, holding the work stoppage on July 31, August 25, and August 26 in violation of the Agreement and ordering the employees to cease and desist from that conduct, as provided in the Agreement. The work stoppage, however, continued, notwithstanding the arbitrator's award. The Corporation then brought these suits in the district court. A hearing on the plaintiff's request for a temporary restraining order to enforce the award took place on August 29, but during a recess the parties agreed to arbitrate the machine shop seniority dispute. On September 2, Arbitrator Santer issued his award agreeing with the Corporation's interpretation, after the announcement of which the employees began to return to work, full attendance being achieved within two days. Since then there has been apparently no work stoppage with regard to the machine shop seniority dispute, although there was allegedly one one-hour work stoppage in 1971 with regard to another matter.

■ We consider first our power to grant the relief requested in the first suit. In Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court held that federal courts have the power to enjoin strikes over disputes subject to binding arbitration under a collective bargaining agreement. It reasoned that this narrow power was necessary to further the strong Congressional policy favoring peaceful arbitration of industrial disputes, and was not inconsistent with the

* Of the Ninth Circuit, sitting by designation.

Norris-LaGuardia Act which was designed to avoid the interjection of the federal judiciary into labor disputes on the behalf of management by means of sweeping, often *ex parte,* decrees. As courts, both before and after *Boys Markets* have recognized, New Orleans Steamship Ass'n v. General Longshore Workers, I.L.A. Local 1418, 389 F.2d 369 (5th Cir. 1968); Pacific Maritime Ass'n v. International Longshoremen's and Warehousemen's Union, 454 F.2d 262 (9th Cir. 1971), an arbitrator's action, in accordance with the collective bargaining agreement, in issuing a cease and desist order against a work stoppage presents an even stronger case for federal power to issue injunctive relief. For here, the court is not being asked to force a party to go to arbitration, which he agreed to undertake, Textile Worker's Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 923, 1 L. Ed.2d 972 (1957), to restrain a party from violating its contractual promise to arbitrate, *Boys Markets, supra,* or to compel compliance with an arbitrator's award confined to interpreting a provision of the collective bargaining agreement. Philadelphia Marine Trade, Ass'n v. International Longshoremen's Ass'n, Local 1291, 365 F.2d 295 (3d Cir. 1966), rev'd on other grounds, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). We are merely being asked to give judicial enforcement, specifically provided for by the Agreement, to an arbitrator's injunction, specifically provided for by the Agreement, issued after voluntary compliance with the expedited arbitration procedure established by the Agreement. Nothing could be closer to the core of the federal labor arbitration policy and further from the core of the Norris-LaGuardia policy.

Concluding that we have power to enforce an arbitrator's order, explicitly authorized by the contract, we turn to the order before us. The arbitrator's award reads as follows:

"It is my finding that employees of General Dynamics, Quincy Division, engaged in a work stoppage on July 31st., August 25th., and August 26th., 1969 in violation of Article XI, Section 1 of the collective Bargaining Agreement.

Employees who have participated in this prohibited work stoppage are directed to refrain from such conduct forthwith and return to work immediately and cease and desist from any such further contract violations."

There is much controversy over the meaning of the final Delphic phrase. We see only two viable interpretations —either the arbitrator meant to bar any further work stoppage, like the one he found occurred on the three named dates, relating to the machine shop dispute, or he meant to bar any further work stoppage in violation of that section of the Agreement. We adopt the former view for two reasons. First, we note the very precise provisions of the collective agreement regarding cease and desist orders:

"In such case, the arbitator shall make findings of fact concerning the alleged violation, and if a violation shall be found to have occurred, he shall prescribe appropriate relief, which shall include an order requiring any party . . . or group of employees to desist from any violations of Section 1 hereof. . . . In the event the arbitrator enters an order to desist from any violations of Section 1 above, it is agreed that he shall make as part of his order a provision in his award to the effect that if he finds there is thereafter a continuing or future violation of this Article during the term of this Agreement it shall automatically be deemed to be subject to the desist order entered by the arbitrator in such proceeding."

Here the arbitrator did not include in his award the provision for applicability of the order, after subsequent findings, to continuing or future violations. Moreover, we cannot read the arbitrator's words as implying such applicabili-

ty; he used the words "cease and desist" only in the final phrase and the Agreement clearly indicates that future violations are to be made subject to that "desist order". We can understand plaintiff's disappointment in the award, but we are powerless to add words to an arbitrator's award.

Our limited reading of the award is bolstered not only by the specificity of the Agreement but also by the potential Norris-LaGuardia difficulties with an injunctive order susceptible of application to an indefinite number of yet uncommenced strike actions over an extended period in the future. *See* Old Ben Coal Corp. v. Local 1487, United Mine Workers of America, 457 F.2d 162, 165 (7th Cir. 1972), New York Telephone Co. v. Communications Workers of America, 445 F.2d 39, 50 (2d Cir. 1971). Certainly in an area where our power is grounded in the policy of enforcing the will of the parties we would not even entertain such a sweeping order unless it was perfectly clear that the parties so intended. Even then we would be most cautious in issuing an order which would in effect involve relinquishment of an equity court's obligation to weigh the circumstances and exercise its discretion in each instance. *Boys Markets, supra,* 398 U.S. at 253–254, 90 S.Ct. 1583; Parade Publications, Inc. v. Philadelphia Mailers Union No. 14, 459 F.2d 369 (3d Cir. 1972).

■ Since we intend to enforce the award, as interpreted to apply only to illegal work stoppages over the machine shop seniority dispute that arose in July 1969, we must consider both whether the issue is now moot and whether we can enforce this order directed at "employees" against their union.[1] The Supreme Court has held that cease and desist orders of the National Labor Relations Board are not moot simply because the picketing at issue had ceased before its

issuance, when one cannot say there is no danger of recurrent violation. Local 1976, United Bhd. of Carpenters and Joiners of America v. N. L. R. B., 357 U. S. 93, 97 n. 2, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958). Here similarly we cannot say there is no danger of recurrent violation. The grievance filed by the Union on behalf of the three machinists was never processed, though apparently requests were made even after the strike ended. We cannot be absolutely certain even now that a work stoppage over the original dispute will not recur. Division 1287, Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963). More significantly, we are far from sure that other work stoppages in violation of Article XI, Section 1 will not occur during the remaining term of this Agreement. Indeed, both parties admit that one brief stoppage did occur in 1971. Since the basic dispute here is over the enforceability of arbitrators' awards under Article XI, there is a real possibility that it will recur if not resolved. Papaliolios v. Durning, 175 F.2d 73 (2d Cir. 1949). 6A Moore's Federal Practice ¶ 57.13. Indeed, if we were to hold it moot, the employees could forever prevent judicial resolution of the issue by returning to work each time just before a decision is issued. We note that at least one court has in an analogous circumstance, found the issue not moot even though the collective agreement under which the award was issued had expired. *Pacific Maritime Association, supra.*

■ Nor is there merit in the claim that the order which enjoins "employees" cannot be enforced against the Union. First, it is not at all clear whether a § 301 suit for injunctive relief lies against individual strikers. The cases raising the liability of individuals have involved money damages and found

---

1. In light of our interpretation of the award, we find no merit in the Union's complaint, grounded in Philadelphia Marine Trade Ass'n, *supra,* 389 U.S. at 74–76, 88 S.Ct. 201, that the award lacks sufficient specificity to be enforced by an injunctive order.

against such liability. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Williams v. Pacific Maritime Ass'n, 421 F.2d 1287 (9th Cir. 1970); Sinclair Oil Corp. v. Oil, Chemical & Atomic Workers International Union, 452 F.2d 49, 54 (7th Cir. 1971) (reserving question of individual liability for strike injunction). Moreover, even if individuals could be directly sued, it would not necessarily follow that a suit against the Union would not lie. Section 301(b) specifically provides that a "labor organization may . . . be sued . . . in behalf of the employees whom it represents in the courts of the United States." 29 U.S.C. § 185(b). This Union's status as representative of the employees is also explicitly recognized in the Agreement. It would certainly frustrate the policies of the federal statute and the intention of the parties were relief against as many as 5000 employees for the same contract violation available only after service of and provision of an opportunity for defense to each and every individual.[2]

■ We turn now to the damage suit. The two defendants [hereinafter the Union] claims that the suit was properly dismissed by summary judgment since the claim for damages as a result of the alleged breach of the no-strike clause was subject to arbitration under the Agreement. The Corporation, although admitting that the issue is arbitrable, claims it is no longer obliged to submit to arbitration because the Union's conduct amounted to repudiation of the Agreement's arbitration provision. The Corporation argues vigorously that the facts of this case are very different from those in the leading repudiation case of Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), and that the

Union's conduct here, unlike there, constitutes repudiation of the arbitration provision as a matter of law. The Union similarly urges us to decide whether the conduct here constitutes repudiation, in light of Drake Bakeries and Local 721, United Packinghouse, Food & Allied Workers v. Needham Packing Co., 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964).

We find, however, that in light of International Union of Operating Engineers, Local 150 v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), the issue of repudiation is for the arbitrator, not us. There the Supreme Court held that the equitable defense of laches even though "extrinsic" to the arbitral process was encompassed within an arbitration provision covering "any difference" and thus an issue for the arbitrator. The dissent noted the implications of that holding for "other affirmative defenses that go to the enforceability of a contract". 406 U.S. at 497, 92 S.Ct. at 1716. We believe that if the equitable defense of laches, which is a general defense not limited to contract suits nor dependent on the provisions of the contract, can be subject to an arbitration provision, then certainly the legal defense of repudiation, which necessarily requires an interpretation of the meaning of the contract and the intent of the parties, can be subject to an arbitration provision, if covered by its terms. In this Agreement, the word "grievance", as to the employer, is defined in the opening definitional Article as:

> "dissatisfaction and complaint by the Employer with any act or failure to act by the Union on members or representatives of the Union."

Although awkwardly worded, we read this clause as applying to any action or failure to act by the Union to induce its

---

2. The Union argues that since the Corporation had, at the arbitration hearing, requested specific other relief against the Union, which request was denied by the arbitrator, it cannot now seek relief against the Union. Since we find that the Union can be sued and made subject to a court order as the representative of the employees restrained by the arbitrator's award, the Union's argument is irrelevant.

members or representatives to do something. We think it therefore clearly covers the Union's failure to induce its representatives to abide by their alleged agreement to arbitrate the machine shop dispute, its failure to prevent its members from striking both before the grievance it filed could be processed and after the cease and desist order was issued, its encouragement of mass picketing and violence, and its failure to induce members to accept the arbitrator's award as to the machine shop dispute, which are essentially the five allegations of the Corporation as to repudiation. However, whatever doubts we may have as to the proper interpretation of the oddly-phrased grievance definition are dispelled by Section 7 of the Grievance Procedure Article, Article IV:

> "In the case of any question involving the interpretation or application of this Agreement, or affecting employes of more than one department, the first two (2) steps of the grievance procedure shall be omitted. . . ."

This sentence obviously intends to identify two subclasses of the general class of grievances subject to the procedure for special treatment. It is indisputable that the question of what conduct, if a breach, constitutes repudiation of the arbitration provision is a "question involving the interpretation or application of this Agreement" and thus an arbitrable grievance.

■ The Corporation has asked us, should we find arbitration necessary, to stay the action pending arbitration rather than affirm the dismissal. It cites language in *Drake Bakeries* to the effect that such a procedure is the only means of preserving both the no-strike and arbitration clauses. 370 U.S. at 264, 82

S.Ct. 1346. But that case was decided in the district court on a motion for a stay pending arbitration and thus the only alternatives before the Supreme Court were affirmance or reversal of the stay. Since we see no statute of limitations problem, Mass.Gen.Laws Ann. ch. 260, §§ 1, 2, and since several other issues could be presented to the arbitrator which might obviate the need for future litigation,[3] we believe the district court properly denied the plaintiff's request and dismissed the action.

No. 72–1112 reversed and remanded for entry of an order enforcing the arbitrator's award; No. 72–1113 affirmed.

---

3. The plaintiff, assuming that if we ordered arbitration, it would be on the damage claim, spoke of arbitration "on the merits" of its claim. The defendant, properly solicitous of its rights, argued that the Corporation was improperly attempting to keep procedural questions, such as the timeliness of the arbitration claim, particularly in light of the Corporation's failure to request damages at the time it sought the cease and desist order, as the Agreement provides, from the arbitrator's reach. If the plaintiff intended to make that argument, we must reject it entirely. Flair Builders, *supra;* John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).